909 A.2d 728 (2006)
388 N.J. Super. 471
Lisa LOZNER (n/k/a Fitzgibbon), Plaintiff-Appellant/Cross-Respondent,
v.
Steven W. LOZNER, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 2006.
Decided October 30, 2006.
*730 Albert L. Cohn, Saddle Brook, argued the cause for appellant/cross-respondent (Cohn, Lifland, Pearlman, Herrmann & Knopf, attorneys; Mr. Cohn, of counsel; Beth G. Oliva, on the brief).
Jeffrey P. Weinstein, Roseland, argued the cause for respondent/cross-appellant (Weinstein, Snyder, Lindemann & Sarno, attorneys; Mr. Weinstein, of counsel and on the brief; Stacey A. Cozewith, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
LEFELT, P.J.A.D.
In this post-judgment divorce action, the motion judge granted defendant Steven Lozner's application to reduce his guidelines-based child support order because of substantial student loan debt. The judge reduced the child support award by finding that defendant's support obligation and student loan debt should not exceed approximately fifty-percent of defendant's net income. The judge's utilization of this arbitrary formula, as well as other errors, require that we remand this *731 matter with instructions regarding how to determine whether substantial student loan debt warrants adjustment of a guidelines-based child support award.

I.
Plaintiff Lisa Lozner and defendant were married on August 15, 1992. Their son Michael was born on January 11, 1995. The parties separated in April of 1998 and, on March 7, 2000, they finalized their divorce. In accordance with a marital settlement agreement, the parties share joint legal custody of Michael and have designated plaintiff as "the Parent of Primary Responsibility," and defendant as "the Parent of Alternate Responsibility." Pursuant to the divorce judgment, defendant, who was in law school at the time, was to "pay child support in the amount of $98 per week [or $421 per month]."
As defendant progressed through college and law school, prior to and during his marriage, he acquired substantial student loans of approximately $240,000. Defendant also acquired approximately $50,000 of credit card debt, which he claims was incurred for educational purposes and to satisfy his child support obligations. Defendant graduated from law school in 2002, and was fortunate to obtain employment at the prestigious law firm of Cadwalader Wickersham & Taft in New York, where his financial prospects brightened considerably.
Defendant's "annual base salary" in 2004 was $135,000. In addition, the law firm periodically awards bonuses. In January 2003, for example, the firm awarded defendant a $4,509.65 bonus and in January 2004, it awarded him a $17,500 bonus. Defendant admitted earning $144,601 in 2004. According to defendant, his "Net Average Earned Income," during the period of January 1, 2004, to June 25, 2004, amounted to $8,664.74 per month. As contrasted with defendant's rising economic prospects, plaintiff works at a travel agency for limited hours, earning an annual gross income of approximately $30,000.
The parties' present dispute began in 2004 when plaintiff attempted to obtain an increase of defendant's support obligation based upon his substantially enhanced earnings. In opposition, defendant argued that plaintiff was underemployed and his large loan debt, which required monthly payments of approximately $2500, precluded a substantial increase in child support over the $116 per week ($500 per month) he had been voluntarily paying since he became employed as a lawyer. In fact, during the hotly contested proceeding, defendant submitted, as noted by the trial court, "a shared parenting worksheet demonstrating he is owed a support obligation of $7.00 weekly."
The motion judge initially ordered, pursuant to the Child Support Guidelines, that defendant should pay support of $231 weekly, with an additional $50 allocated to arrears. The $231 constituted only 13.4% of defendant's $1,720 weekly net income. But defendant moved for reconsideration based upon his large "student loan obligation." He specifically argued "that the Court consider the $576.98 per week [he paid] for student loan debt and [he requested] that [his] net support obligation remain at $116.00 per week for a total of $500 per month."
The court granted defendant's motion and reduced his weekly child support from $231 ($993 monthly) to $173.68 ($746.82 monthly). However, the judge made two mistakes in reaching the reduced figure. First, he found that defendant's net weekly income was $1,501.31, when, in fact, the judge had previously calculated defendant's net weekly income as $1,720, based on a net annual income of *732 $89,447.82. Second, the motion judge arbitrarily and without specific explanation concluded "that defendant's combined child support and loan payments should equal approximately 50% of his net weekly income." These two mistakes require that this matter be remanded to the trial court.

II.
While both parties agree that a remand is in order, they differ sharply on the content of any instructions that should be provided to the remand judge. Plaintiff argues, for example, that the child support award was too low because the judge should not have considered all of defendant's educationally related debt in reducing the guidelines-based award. In response, defendant argues that the judge should have reduced the support figure even further by properly considering defendant's almost $580 weekly student loan payments. This sharp dispute thus presents the issue of whether a large student loan debt constitutes a factor that may require alteration of a guidelines-based child support award.
Resolution of this issue necessitates that we reconcile several knotty conflicting policies regarding student loans and child support. For example, further education often increases earning capacity over time that would be expected to inure eventually to a child's benefit. When further education is funded through student loans, however, a legally unavoidable regular repayment obligation is created. See U.S.C.A. § 523(a)(8) (specifying that student loan debt is not dischargeable in bankruptcy except for "undue hardship on the debtor and the debtor's dependents"); Pennsylvania Higher Educ. Assistance Agency v. Faish, 72 F.3d 298, 303 (3rd Cir.1995) (interpreting undue hardship); 34 C.F.R. § 30.1 (1988) (explaining actions the Department of Education Secretary may take to collect a debt); Lockhart v. United States, 546 U.S. 142, ___, 126 S.Ct. 699, 700, 163 L.Ed.2d 557, 560 (2005) (approving the offset of social security benefits to collect a delinquent student loan). When determining child support, if a court were to disregard a large student loan debt, parents may be discouraged from financing further education, which may prove detrimental to their children.
However, any benefit to the child would be elusive if the debt is so large that a dollar for dollar or substantial deduction would reduce current support to an alarmingly low level. This is compounded by the fact that student loan repayment often takes place over an extended period of time. E.g., 20 U.S.C.A. § 1078(b)(9)(A)(ii) (debtor can choose "a graduated repayment plan paid over a fixed period of time, not to exceed 10 years"); 20 U.S.C.A. § 1078(b)(9)(A)(iv) ("For new borrowers . . . who accumulate . . . outstanding loans . . . totaling more than $30,000, [payments may be made] over an extended period of time, not to exceed 25 years."). If the child support is substantially reduced to ameliorate a parent's significant student loan repayment, a child may be deprived of any benefit that may have resulted from the parent's education-derived increased earning power because he or she may be emancipated by the time the student debt is retired. As one court has noted, "debts can be refinanced, but . . . childhood cannot be postponed." In re Marriage of Nelson, 570 N.W.2d 103, 108 (Iowa 1997).

A.
The Child Support Guidelines are used to calculate fair and adequate child support awards, and approximate the percentage of parental net income spent on children in intact families. Caplan v. Caplan, 182 N.J. 250, 264, 864 A.2d 1108 (2005) (citing Child Support Guidelines, *733 Pressler, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at 2507 (2005)). When determined pursuant to the guidelines, a child support order is rebuttably presumed to be correct. Pressler, supra, Appendix IX-A at 2217 (2007); Ordukaya v. Brown, 357 N.J.Super. 231, 239, 814 A.2d 1138 (App.Div.2003).
A court may deviate from the guidelines only when good cause demonstrates that application of the guidelines would be inappropriate. Ribner v. Ribner, 290 N.J.Super. 66, 73, 674 A.2d 1021 (App. Div.1996). When a court "finds that the guidelines are inappropriate in a specific case, it may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the children or the parents' circumstances." Pressler, supra, Appendix IX-A at 2217.
Among the several factors a court may consider in determining whether an adjustment of the guidelines is warranted is the "educational expenses for either parent to improve earning capacity." Id. at 2237. Although this factor does not specifically refer to student loans, educational expenses can be paid with funds obtained through such loans, which creates a repayment obligation that we cannot disregard.
We note further that the specific factors listed in ¶ 21 of Appendix IX-A, which may require adjustment to guidelines-based child support awards, are not exclusive. Ibid. Courts are specifically permitted to consider "other factors that could, in a particular case, cause the child support guidelines to be inapplicable or require an adjustment to the child support award." Ibid.
Moreover, in instances where the guidelines do not apply, N.J.S.A. 2A:34-23(a) requires the court in establishing "the amount to be paid by a parent for support of the child," to consider among several other items the "[r]easonable debts and liabilities of each child and parent." Id. at (a)(9). Therefore, we hold that substantial loan debt can constitute a factor to be considered in determining whether alteration of a guidelines-based support award is warranted, provided the parent reasonably and necessarily acquired the loan for educational purposes with the goal of improving his or her earning capacity.

B.
Obviously, not all debt liability can be considered the substantial equivalent of a student loan. For example, defendant's case information statement lists credit card debt as student loans, and without conducting any evidentiary hearing the trial court treated the two types of debt similarly. If a credit card were used to purchase books or pay tuition, this would constitute an educational expense and could be, for our purposes, substantially similar to debt incurred through student loans. But credit card debt acquired by a parent to maintain a comfortable life style while attending school is not the substantial equivalent of student loan debt. On the remand, therefore, the court must exclude debt that defendant acquired, but was not reasonably and necessarily incurred to further his education and eventually enhance his income or earning capacity. See Roper v. Johns, 345 Ill.App.3d 1127, 281 Ill.Dec. 655, 804 N.E.2d 620, 625 (2004) (only reasonable and necessary student loan debt may be considered in determining whether to adjust a guidelines-based support award).
A debt allegedly incurred to further education is necessary when the parent believes in good faith that the loan will eventually result in increasing his or her income. Id. 281 Ill.Dec. 655, 804 N.E.2d at 625-26. The debt is reasonable *734 when it is not extreme in relation to the parent's expected economic benefit. Ibid. In this case, for example, the trial court should consider whether defendant's goals could have been achieved without incurring such overwhelming debt. Was there a reason defendant worked toward his undergraduate and graduate degrees for eleven consecutive years without obtaining a job in between? Or, could defendant have gone part time to law school, or attended a less expensive school? It should also not be forgotten that there are a variety of repayment plans for student loans and that consolidated student loans "equal to or greater than $60,000 [may] be repaid in not more than 30 years." 20 U.S.C.A. § 1078(c)(2)(vi).
It is defendant's burden to provide the court with "the amount of the loans, the terms of the loans, the amount attributable to principal and interest, and the amount of the loans that were used for education, child support, or other expenditures." Noonan v. Noonan, 261 Neb. 552, 624 N.W.2d 314, 324 (2001). Defendant must also reveal whether the loan terms allow defendant to reduce the size of monthly payments or consolidate the loans in some fashion. Ibid.

C.
After isolating only the reasonable and necessary school debt that was acquired to enhance defendant's earning capacity, the question the court must then confront is whether the best interests of the child require an adjustment of the support award. Pressler, supra, Appendix IX-A at 2237. The guidelines should not be altered unless defendant has rebutted the presumption "that an award based on the guidelines [is] the correct amount of child support [, or has established] that injustice would result" from their strict application. Id. at 2217. Thus, if good cause mandates an alteration, then the court must proceed to determine by how much and for what duration.
We do not have a statute as in Svenningsen v. Svenningsen, 641 N.W.2d 614, 615-16 (Minn.Ct.App.2002), that limits the consideration of debt to "18 months in duration, after which the support shall increase automatically to the level ordered by the court." Minn.Stat. § 518.551 (2005). Nevertheless, in reaching an equitable balance of the various policies involved, a court need not accord the student-loan-debtor parent a reduction of child support for the entire duration of the loan payback period. Rather, some lesser period may be crafted by the court to better balance the competing policies in the best interests of the child.
Most courts that have considered appropriate treatment of student loans have made adjustments to the supporting parent's net income. For example, in State ex rel. Elsasser v. Fox, 7 Neb.App. 667, 674, 584 N.W.2d 832 (1998) (father's total student loan was $17,000), the court deducted the parent's entire monthly payment of $178.09. Although it seems logical, when dealing with extraordinary student loan debt, to make an adjustment to the parent's net income, we do not wish to preclude any other reasonable method a judge may select to ameliorate any inequities and properly balance the competing interests.
In any event, we conclude that a dollar for dollar deduction of a student loan from net income that significantly and substantially reduces the child support award for many years would often not be in the best interests of the child. Such a reduction would usually fail to balance properly the competing concerns, especially those which seek to ensure that the child share in the supporting parent's economic good fortune. Walton v. Visgil, 248 *735 N.J.Super. 642, 644, 591 A.2d 1018 (App. Div.1991); Zazzo v. Zazzo, 245 N.J.Super. 124, 130, 584 A.2d 281 (App.Div.1990). Defendant himself, in this case, inadvertently confirms this concern by arguing that after taking his enormous debt into account, his true earning capacity is so diminished that it is at the same level of a law student earning approximately $30,000 per year. Accordingly, we do not subscribe to a dollar for dollar deduction in all instances.

D.
Regarding the amount of the reduction, we do not approve any percentage of net income to which the debtor's student loan repayment and child support must equal. Nevertheless, it is possible to accord the debtor parent a reduction based only upon a percentage of the monthly loan payment. In Wilkins v. Wilkins, 269 Neb. 937, 697 N.W.2d 280, 288 (2005), for example, the court affirmed "a deduction of 25 percent of [the debtor parent's] monthly student loan payment . . . from his monthly income."
Instead of beginning with a percentage in mind, however, the trial court should consider the effect on the family of any particular deduction that is being advanced. The relevant factors mentioned in N.J.S.A. 2A:34-23(a) can be utilized to make this assessment. For example, the court should evaluate what impact any deduction might have upon the needs of the child and the standard of living and economic circumstances of both parents. The court should also consider any other relevant factors including other sources of income and assets of each parent, the earning abilities of both parents, and the age and health of the child and each parent. See ibid.
By considering these factors on remand, the court should attempt to balance fairly the needs of the parents and yet ensure that children remain adequately supported in accordance with their parents' financial wherewithal. The overall goal of every child support determination must not be forgotten: the best interests of the child remain paramount. Martinetti v. Hickman, 261 N.J.Super. 508, 512, 619 A.2d 599 (App.Div.1993).

III.
Besides contending that the child support order was too high because of defendant's extraordinary debt obligation, defendant also cross-appealed, challenging the motion judge's rulings on (1) plaintiff's housing costs; (2) defendant's partial responsibility for summer camp expenses for Michael; (3) defendant's responsibility for a portion of unreimbursed medical expenses incurred by plaintiff; (4) defendant's purported transportation costs incurred when visiting his son; and (5) plaintiff's voluntary underemployment. We find all of these contentions to be without merit and undeserving of any discussion in a written decision. R. 2:11-3(e)(1)(E). We affirm the motion judge on these rulings substantially for the reasons expressed by the judge.
For the reasons explained in Parts I and II above, we reverse the child support award and remand for further proceedings in conformity with this decision.
Reversed and remanded in part, affirmed in part.