132 A.3d 441

THOMAS FICHTER, PLAINTIFF, v. DEIRDRE
FICHTER, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Ocean County

Decided October 21, 2015.

206

*Thomas Fichter,* plaintiff pro se.

*Deirdre Fichter,* defendant pro se.

L.R. JONES, J.S.C.

In 2013, the State of New Jersey amended the Child Support Guidelines to include additional provisions relating to the cost of motor vehicle insurance. These amendments, however, have raised further questions and debate as to when a parent who is already paying guideline-level child support is also obligated to contribute to the additional cost of an unemancipated teenage child's car insurance as a newly licensed driver. There is apparently no case law addressing this issue subsequent to the 2013 amendments.

 For the reasons set forth in this opinion, the family court, in its reasonable discretion, may increase or otherwise adjust guideline-level child support in a particular case to account for the additional cost of car insurance for a newly licensed teenage driver.

## FACTUAL BACKGROUND

Plaintiff and defendant married in 1991 and divorced in 2011. In a detailed and comprehensive divorce settlement agreement, the parties agreed to share joint legal custody of their two children, Todd [1] (a son, then age seventeen) and Megan (a daughter, then age thirteen), with defendant serving as primary residential custodian. The parties further agreed that plaintiff would pay child support to defendant of $303 per week for the two children under New Jersey's Child Support Guidelines, pursuant to a guideline worksheet affixed to the settlement agreement.

As part of their divorce settlement, the parties expressly agreed that they would each contribute to the cost of their son's motor vehicle insurance. At that time, Todd was driving a used 2005 Volvo, which was technically owned by defendant as a second vehicle under the parties' settlement agreement. Defendant herself drove a 2010 Volvo, but made the 2005 Volvo primarily available for Todd's transportation needs.

Conspicuously missing from the parties' settlement agreement was any stipulation or provision addressing the issue of funding car insurance costs for their daughter, Megan. Implicitly, the most logical reason for such absence was because the child was only thirteen years old at the time, and the parties simply deferred the issue to a future relevant time, i.e., once their daughter became old enough to drive. At that time, the issue would then either be resolved by consent or, if necessary, by application to the court.

---

[1] The court uses first name pseudonyms for the parties' children.

Such "future relevant time," however, is now. Megan has recently turned seventeen, and has just obtained her driver's license. Meanwhile, Todd is now emancipated. As regarding defendant's 2005 Volvo that Todd drove for four years, this vehicle has remained in the ownership and possession of defendant, who with her consent will be making the car primarily available for Megan's use. Meanwhile, as a result of Todd's emancipation, plaintiff's base child support obligation has significantly decreased from $303 per week to $213 per week.

Under the totality of the circumstances, defendant seeks contribution from plaintiff, above his guideline-level support, towards the additional cost of Megan's present car insurance. In furtherance of her request, defendant has obtained a quote for the cost of car insurance for Megan. For an additional annual premium of $854, defendant may insure the child and car under her own policy. Defendant contends this premium is reasonable and affordable to both parties when each contributes to the cost. The proposed coverage would provide Megan as a new driver with above-minimum, personal injury liability limits of $100,000 per person, and $300,000 per accident. It would also provide personal injury protection (PIP) benefits, as well as both collision and comprehensive coverage, along with property damage liability coverage.

Plaintiff, however, has neither agreed nor disagreed to contribute. Instead, he has supplied no reply at all to defendant's request, and has not contributed any additional funds, or otherwise confirmed that he is willing to contribute any such funds, to this expense. Accordingly, defendant has filed a motion seeking a court order compelling such contribution on a mandatory basis. Plaintiff has not filed a response.

In family court, the fact that there is no response to a party's application does not mean that the filing party automatically "wins" by default, and gets everything he or she seeks from the court. *See Clementi v. Clementi*, 434 *N.J.Super.* 529, 533–536, 85 *A.*3d 425 (Ch.Div.2013). To the contrary, even when there is no

response, a moving party still must persuade a court of equity that the relief requested is fair, equitable and appropriate under the totality of the circumstances. *Id.* at 534, 85 *A.*3d 425. Thus, the legal question remains whether defendant may obtain an order directing plaintiff to contribute a fair amount to their daughter's car insurance, above the guideline-level child support he is paying under current order. In this case, the court answers in the affirmative.

## LEGAL ANALYSIS

### NEW TEENAGE DRIVERS AND THE CHILD SUPPORT GUIDELINES

For many years, there was extensive and unresolved legal debate by matrimonial attorneys over: (a) whether child support amounts under New Jersey's Child Support Guidelines already included a parent's contribution to the cost of a child's car insurance as a new teenage driver, or (b) whether such cost should be treated as an add-on expense and obligation supplementing basic child support. Moreover, even if insurance was technically already included in guideline-level support, a related secondary issue was whether a court could nonetheless deviate from the guidelines and increase child support to include additional parental contribution by both parents, specifically earmarked to help defer the cost of car insurance for a newly licensed teenage driver. While recent amendments to the guidelines address some of these issues, uncertainty of interpretation remains.

New Jersey's Child Support Guidelines are located in Appendix IX–A of the *New Jersey Court Rules.* Pursuant to comment 2 therein, the guidelines are used as a rebuttable presumption to establish and modify child support orders. *See Ribner v. Ribner,* 290 *N.J.Super.* 66, 73, 674 *A.*2d 1021 (App.Div. 1996); *Chobot v. Chobot,* 224 *N.J.Super.* 648, 649, 541 *A.*2d 251 (App.Div.1988). *See also Lozner v. Lozner,* 388 *N.J.Super.* 471, 480, 909 *A.*2d 728 (App.Div.2006). A rebuttable presumption

means that an award based on the guidelines is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist that make a guideline-based award inappropriate in a specific case. Child Support Guidelines, Pressler & Verniero, *Current N.J. Court Rules,* Appendix IX–A to *R.* 5:6A at 2625 (2015).

The guidelines were recently amended as of September 1, 2013, following an extensive review by the Supreme Court Family Practice Committee, and issuance of detailed recommendations dated April 10, 2013.[2] The amendments included new language that addressed, in general, add-on expenses for costs resulting from a parent supplying a car to a child as a new driver. This additional language, however, left open the issue of whether the cost of insurance, as opposed to the cost of the vehicle itself, was an appropriate add-on expense to basic guideline-level support. The Supreme Court Family Practice Committee's report indicates that (a) the Committee considered this question of interpretation, but (b) did not reach a definitive conclusion as to the answer. Specifically, the Committee's report states:

> The issue presented is whether the basic child support amount includes those automobile expenses and insurance costs incurred by a parent that are related to the exclusive use by the child. The Committee believes that such expenses should be an add-on to the basic child support amount. *The Committee also discussed, but did not reach a conclusion as to whether the expenses for the child's car include the cost of insurance for that vehicle as distinguished from the insurance cost for adding a licensed minor driver residing in the home....*
>
> [*Supplemental Report of the New Jersey Supreme Court Family Practice Committee,* April 10, 2013, p. 5 (emphasis added).]

The continued ambiguity on this issue, even after enactment of the 2013 guideline amendments, was recently noted in legal commentary published in *New Jersey Family Lawyer,* the official publication of the New Jersey State Bar Association's Family Law Committee. *See* Brian Schwartz, "Deviation from the Child Support Guidelines: A Pipe Dream or Reality," *New Jersey Family*

---

[2] The official title of the report is the "Family Practice Committee 2011–2013 Supplemental Report."

*Lawyer*, Vol. 34, No. 3, p. 3 (December 2013). Therein, the author noted that "[t]he current Rules of Court left unresolved the issue of whether automobile insurance for a new driver is included or not included in the basic award." *Ibid.*

Interestingly, the Schwartz article opined that some may interpret the amended guidelines to mean that the cost of insurance coverage for a new teenage driver may be an add-on expense only when the parents provide the child with his or her own vehicle, but not when the teenager is simply added as an additional driver to a parent's vehicle. The article further comments that, arguably, such a distinction may unintentionally discriminate against lower-income custodial parents who simply cannot afford to buy their child a separate vehicle, but who nonetheless incur significant costs in adding a new teenage driver onto an existing family policy. *Ibid.*

In short, the question of how to address the issue of car insurance for a teenage driver under the recent guideline amendments, and the meaning and intent of such amendments, remains subject to ongoing legal analysis and interpretation. With the amendments still relatively new, and with little precedential case law and authority to serve as guidance for the bench and bar, a court addressing this issue must do so by prioritizing equity, logic, and substance over form, while applying concepts of reason, fairness, and common sense in a manner that most consistently furthers the best interests of a child at issue, i.e., a new teenage driver, in a given case.

Under a literal reading of the language in Appendix IX–A, comment 8 of the guidelines, a non-custodial parent's guideline-level child support obligation includes consideration of the following expenditures: "All costs involved with owning or leasing an automobile including monthly installments toward principal cost, finance charges (interest), lease payments, gas and motor oil, insurance, maintenance and repairs." *Child Support Guidelines, supra,* at 2632.

Comment 8 further states that the net outlay (purchase price minus the trade-in value) for a the purchase of a vehicle for the child is not included in the guidelines, nor are expenses associated with a motor vehicle purchased or leased for the intended primary use of the child subject to the support order. *Id.* at 2586. Moreover, under a different category contained in comment 21, captioned as "Other Factors that May Require an Adjustment to a Guidelines–Based Award," there is a new provision under comment 21(p), which states that *"a motor vehicle purchased or leased for the intended primary use of a child subject to the support order"* may be a factor warranting a support adjustment (emphasis added). *Id.* at 2645. This provision arose from a recommendation of the Supreme Court Family Practice Committee, which intended that such provision would "clarify that the Appendix IX–F schedule does not include automobile expenses incurred for the intended primary use of the child." *See* Family Practice Committee 2011–2013 Supplemental Report, *supra,* pp. 5–6. The guidelines do not, however, expressly define or identify those "expenses" associated with such vehicle which are covered, as distinguished from those that are not covered. Hence, the question continues as to whether the cost of the new driver's car insurance should be considered as included in guideline-level child support.

Those who contend that the guidelines already account for the cost of car insurance for the teenage driver may point out that since comment 8 contains the word, "insurance," a literal reading of the guidelines supports the conclusion that a non-custodial parent's additional contribution toward a newly licensed child's car insurance should be zero, as this cost has somehow already been considered, included, incorporated, and accounted for in advance in guideline-level child support. Advocates of this position may further contend that the word "insurance" should be interpreted to include not only the cost of the parent's insurance as a driver and residential custodian with transportation responsibilities for a child, but also the extra cost of insurance for a child once he or she becomes an additional licensed driver in the household. The net effect of such an interpretation however, is that the custodial

parent would end up receiving the same amount of child support both before and after a teenage child obtains a driver's license, irrespective of the sudden need to insure the teenager, the additional cost of such insurance, and the nature of the additional financial burden placed upon the custodial parent's shoulders to provide adequate insurance for the child as an inexperienced driver on the public roadways.

In certain cases, there may be points of legitimate economic concern with the financial fairness of such an interpretation and result to both the custodial parent and child. First and foremost, in applying a logical and rational meaning to the phrase, "*expenses associated with a motor vehicle purchased or leased for the intended primary use of a child subject to the support order,*" (emphasis added) there is no clear reason to read an implied exclusion of car insurance into this provision. Since one cannot legally drive an uninsured car in New Jersey, extra insurance for a new driver is a necessary expense associated with operation of a motor vehicle, whether the child is driving his or her own car or a family car shared by other licensed drivers in the household.

■ Additionally, the guidelines do not expressly set forth whether "expenses" relate only to cost of the new purchase or lease of an additional vehicle for the newly licensed child, or whether same also includes "expenses" related to a vehicle which is already owned and possessed by a parent, who then makes such vehicle available to the child for his or her primary use. The court concludes that the latter, more expansive definition is most reasonable and appropriate, particularly given the public policy of providing appropriate support and protection to the best interests of an unemancipated child. In fact, a child's best interests is the paramount public policy consideration behind every child support determination in New Jersey. *See Lozner, supra,* 388 *N.J.Super.* at 484, 909 *A.*2d 728.

■ Moreover, even if one technically interprets guideline-level support to already include the cost of a teenage driver's car insurance, the very same guidelines also permit the family court

reasonable discretion to deviate from the guidelines in order to reach an equitable and just result. The Child Support Guidelines are not cast in stone, but are in fact *guidelines*, subject to deviation as a matter of fairness on a case-by-case basis. *Rule* 5:6A states in part:

> The guidelines set forth in Appendix IX of these Rules shall be applied when an application to establish or modify child support is considered by the court. The guidelines may be modified or disregarded by the court only where good cause is shown. Good cause shall consist of a) the considerations set forth in Appendix IX–A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and b) the fact that an injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court.

Comment 2 of Appendix IX–A states that the guidelines may be disregarded, or a guideline-based award adjusted, if "an injustice would result due to the application of the guidelines in a specific case," and that "the determination of whether good cause exists to disregard or adjust a guidelines-based award in a particular case shall be decided by the court." *Child Support Guidelines, supra,* at 2625. Comment 3 to Appendix IX–A provides that "[i]f the court finds that the guidelines are inappropriate in a specific case, it may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the children or the parents' circumstances." *Ibid.*

█ The court finds that, based upon the totality of a family's economic circumstances, a court may in its discretion find good cause to deviate from the guidelines and require each parent to contribute additional reasonable and affordable monies towards a newly licensed teenage driver's car insurance. Good cause may logically include, but not necessarily be limited to, the special nature and importance of car insurance and the need to adequately protect a child as a newly licensed driver.

The court notes that reasonable motor vehicle insurance coverage is highly critical to protect a teenage driver's health, safety and welfare. Further, reasonable coverage is equally significant for protection of the public at large, as any innocent third person in the wrong place at the wrong time can be seriously hurt by a

teenager's inexperience behind the wheel. In fact, the National Safety Council (NSC) advises that (a) motor vehicle accidents are the leading cause of death for teens in the United States; (b) the most dangerous time of a teen driver's life is the first twelve months after receiving a license, and (c) a teen driver's crash risk is three times that of drivers twenty and older.[3] The State of New Jersey has formally recognized the public importance of coverage as well, through a series of annual initiatives and releases from the New Jersey Attorney General's office.[4]

Moreover, the expense of car insurance for a teenage driver has distinguishable characteristics from many other items in a family budget. For example, New Jersey law requires drivers to carry at least minimum levels of insurance. *See N.J.S.A.* 39:6B–1. Further, the price of insurance is generally more costly for parents than most other child-related expenses, and for many families may be one of the most expensive items in the annual family budget. Reasonable insurance coverage for a new driver may be practically unaffordable and unattainable by the custodial parent without additional and equitable contribution from both parents, above and beyond whatever one may be paying in standard "guideline-level" support. Additionally, the cost for the custodial parent is generally sudden and dramatic, in that the expenditure is necessary as soon as the teenage driver obtains the license, and can economically destabilize a conservative family budget. Moreover, the cost of insurance is highly dependent upon many distinct factors, including but not limited to the amount of coverage and protection sought for the teenage driver, and may therefore vary considerably from case to case.

---

[3] *See* http://www.nsc.org/safety_road/TeenDriving/Pages/teen_driving.aspx; http://teensafedriving.org/blog/the-most-dangerous-time-of-your-teen-drivers-life/ (last visited October 2, 2015).

[4] *See* http://www.nj.gov/oag/newsreleases11/pr20111017b.html (last visited October 21, 2015).

All of these factors may logically constitute good cause for a deviation or adjustment from the guidelines, if and when necessary, in order to provide reasonable motor vehicle insurance coverage for the protection of a child. For these reasons, regardless of whether the cost of coverage for a new teenage driver is technically considered as included or excluded under the guidelines, the end result may as a matter of financial equity be exactly the same in terms of additional parental contribution toward this very important expenditure. In treating the matter of financial support, our courts have always looked beyond a parent's claims of limited resources and economic opportunity, and have gone far to compel a parent to do what in equity and good conscience should be done for the children. *See Lynn v. Lynn,* 165 *N.J.Super.* 328, 341, 398 *A.*2d 141 (App.Div.1979).

There is another distinct legal point to consider in the analysis of funding car insurance for a teenage driver. In the state of New Jersey, a child cannot obtain a probationary driver's license until he or she turns at least seventeen years of age, or a basic license until the age of eighteen. *See N.J.S.A.* 39:3-13. Meanwhile, within only one year after licensure, a newly licensed seventeen-year-old driver will naturally turn eighteen years old. If the child plans to attend college or technical school on a full time basis, the child may well remain legally unemancipated for some extended additional period of time under New Jersey law. The Child Support Guidelines, however, no longer have mandatory application at that time. *See Child Support Guidelines, supra,* at 2646.

■ Under Appendix IX–A, comment 18, a court in its discretion may still utilize the Guidelines to determine post-high school support if an over-eighteen child commutes to college from a parent's home. *Id.* at 2643–44. There is, however, no legal requirement or compulsion for the court to still use and apply the guidelines at that time, especially if the net effect of such utilization is to dangerously reduce or eliminate the child's ability to secure reasonable motor vehicle insurance coverage. Instead, child support—including contribution to the teenager's car insur-

ance—may be analyzed under the non-guideline, statutory factors set forth in *N.J.S.A.* 2A:34–23. Therefore, the legal argument that guideline-level child support already includes a non-custodial parent's contribution to car insurance is very short-lived at best, and even if accepted by the court, may become completely moot soon after entry of an order regarding same.

■ As noted, defendant is seeking to provide Megan with motor vehicle insurance coverage of above-minimum personal injury liability limits of $100,000 per person and $300,000 per accident. The proposed policy also provides PIP benefits, as well as both collision and comprehensive coverage. The annual premium, while costly, is reasonable and affordable to both parties when each party contributes to the cost. Given the totality of the circumstances in this case, including the foregoing points and review of the case information statements on file, the court finds that defendant's request for both parties to contribute to the proposed insurance coverage for Megan is reasonable, and particularly affordable if the parents equally share responsibility for same at this time. Defendant's request is prudent and logical, both as a litigant and as a parent of a newly licensed teenager.

Conversely, there is nothing in defendant's position that is economically unfair or unreasonable. This is not a case where, for example, one parent unreasonably expects the other parent to insure an unnecessarily elaborate, high-end-vehicle for their child. To the contrary, defendant is proceeding in a highly conservative fashion, and the car in question is a used, ten-year-old vehicle that has been in the family for years. Defendant's interest here is clearly to protect the parties' child's best interests by reasonably providing her with more than minimal insurance. Her intentions are appropriate and her position is financially sound and logical.

## CONCLUSION

For the foregoing reasons, the court directs that the parties will divide the cost of their daughter's insurance on a fifty-fifty basis. Given the importance of this issue, the imposition of this cost is

fair, equitable, and well worth the extra investment by both parents in their child's safety. As Megan is still a minor and in high school, she will not be required to pay for her own insurance.

Once the child turns eighteen and graduates high school, if she is still unemancipated at that time, the parties are encouraged to discuss with Megan the concept of the child contributing an equitable portion of the premium as well, such as one-third the cost, or any other mutually agreeable amount, in order to help teach the realities of financial responsibility. *See Jacoby v. Jacoby*, 427 *N.J.Super.* 109, 122, 47 *A*.3d 40 (App.Div.2012) (court may require an unemancipated child over eighteen, in some circumstances, to help contribute to certain expenses by utilizing savings, or wages from summer work, co-op jobs, or part-time employment). The present order, however, remains in full force and effect unless and until terminated or modified by subsequent order following application by either party. Such application may include, but not necessarily be limited to, any reasonable motion to require a fair financial contribution by Megan herself to this cost after her eighteenth birthday until her emancipation.