**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1764-19

TOVA ROSS,

     Plaintiff-Respondent,

v.

DAVID EVAN ROSS,

     Defendant-Appellant.

_____

> Argued November 1, 2021 – Decided November 30, 2021
>
> Before Judges Rose and Enright.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2667-15.
>
> David Evan Ross, appellant, argued the cause pro se.
>
> Tova Ross, respondent, argued the cause pro se.

PER CURIAM

In this post-judgment matrimonial matter, defendant David Evan Ross appeals from a November 18, 2019 order fixing his child support obligation and his arrears; he also challenges a January 15, 2020 order denying his request to compel plaintiff to accommodate adjustments he may seek to the parenting time schedule.[1]  We reverse the November 18 order and affirm the January 15 order.

I.

Defendant and plaintiff Tova Ross were married in 2008 and divorced in 2015.  Under the Marital Settlement Agreement (MSA) incorporated into the parties' Dual Judgement of Divorce (JOD), they share "joint legal and residential custody" of their two children, ages nine and twelve, and enjoy time with the children pursuant to an alternating weekly schedule.  Although each party is designated as a parent of primary residence (PPR) under the MSA, plaintiff is the children's true PPR because the parenting time schedule provides that she spends more than half of the overnights with the children annually.  See Child Support Guidelines (Guidelines), Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶14(b)(1), www.gannlaw.com (2022).  The

---

[1] The November 18 order amended a November 15, 2019 order, and the January 15 order amended a September 13, 2019 order.  In both instances, the orders were amended to reflect the correct docket number for the case.

parties agree defendant has 156 overnights with the children each year, i.e., less than half the overnights.

When the parties executed the MSA, they stipulated defendant would pay child support at the rate of $600 per month. Also, under the MSA, they agreed plaintiff "may be taking up to an additional [twenty] nights of parenting time to accommodate [defendant's] work schedule" and the child support "payment . . . takes same into account." (Emphasis added).

In February 2017, the parties executed certain post-judgment agreements (PJAs) to memorialize modifications they made to the MSA. In one PJA, defendant's child support obligation was lowered from $600 to $475 a month for the period between January and April 2016, to account for the children's transfer to his health insurance plan. Another PJA provided, in part:

> [B]eginning on May 4, 2016, . . . we have agreed to reduce the monthly amount for child support for [our two children] from $475 a month to $300 a month due to the revision of the child support clause on page [twelve] of the [MSA], which states, "the parties have agreed that, effective July 1, 2015, Husband shall pay the sum of $600/month as and for child support to the Wife. The parties agree that the Wife may be taking up to an additional [twenty] nights of parenting time to accommodate Husband's work schedule and that the payment set forth above takes same into account."
>
> [The parties] have agreed that they will amend the above clause to state that when [Husband] has a work

3

conflict that affects the parenting schedule, the parties will arrange a <u>mutual</u> "switch" which does not increase the parenting time for [Wife]. Due to this new agreement between the parties, the child support amount was reduced, as of the above date, from $475 a month to $300 a month.

(Emphasis added).

## II.

Starting in June 2019 and for months thereafter, the parties engaged in heavy motion practice, raising several issues which required the trial court's intervention. We address only those issues pertaining to the instant appeal.

Initially, plaintiff moved for an upward modification of child support. She argued the children had "increased needs" and that defendant no longer should benefit from a reduced child support obligation because his health insurance coverage for the children lapsed. Several weeks later, defendant filed a cross-motion, asking, in part, that the judge recalculate his child support obligation due to a purported increase in plaintiff's salary. Further, he asked that he be permitted to provide a "six[-]month parenting schedule" twice a year, to which plaintiff would have to agree "unless she [could] demonstrate a valid reason why she [could] not adhere to the schedule." Defendant based this request on assertions plaintiff no longer cooperated with him in "switching" days if he had

4

a musical "gig" that conflicted with his scheduled parenting time. He claimed that he "lost many clients and potential clients over the years as a result."

The judge heard argument on the parties' cross-applications on September 13, 2019. Defendant appeared with counsel; plaintiff was self-represented. Given that both parties sought a review of child support, the judge ordered each party to submit updated case information statements (CISs) by the following month, and directed the parties specifically to include their three most recent pay stubs and three most recent tax returns.

After she heard argument from defendant's counsel about defendant's request that plaintiff be ordered to accommodate his adjustments to the parenting time schedule, the judge denied this relief. The judge observed that the provision in the MSA reflecting that plaintiff "may be taking up to an additional [twenty] nights of parenting time to accommodate [defendant's] work schedule" was "actually in the child support section" and the parties used the word, "may," rather than "shall," in that section of the MSA. Therefore, the judge found plaintiff might spend up to twenty additional nights with the children per year but was not obligated to do so. Further, the judge deduced that given the permissive language tied to the additional overnights was included in the child support section of the MSA, "the inference [was] that [plaintiff] would not be

5

entitled to more child support based upon [the extra] overnights." Also, because the parties subsequently entered into a PJA that lowered defendant's child support obligation to $300 a month and "introduce[d] this concept of switching," the judge concluded "child support was reduced based upon the fact that there's not this potential for [twenty] additional nights of parenting time." She further interpreted the PJA that mentioned "switching" to mean that "when [defendant] has a work conflict, the parties will arrange a mutual switch which does not increase the parenting time" to plaintiff. The judge also noted, "[t]here's nothing in either the [MSA] or . . . the [PJA] that says the switches are required or mandatory of [plaintiff]." Accordingly, the judge denied "the relief . . . that [plaintiff] must agree unless she can demonstrate a valid reason why she can't adhere to [defendant's] schedule."

Despite this ruling, defendant's attorney continued to argue that plaintiff should accommodate defendant's work schedule, remarking that plaintiff had acted in "bad faith," and "contrary to what the agreement was." Moreover, defendant attempted to interject his own comments, at which point the judge reminded defendant that his attorney "ha[d] spoken on [his] behalf." The judge also stated that while she would "encourage the parents to work together," "there's nothing here from which I can find that [plaintiff] has not operated in

6

good faith" so the court would "not requir[e] [plaintiff] to show [a] valid reason why she can't switch parenting time with [defendant]."

Following argument, the judge entered an order, denying the bulk of the relief sought by the parties, but reserving on defendant's request for a counsel fee award and scheduling another date for the parties to return to court to address the issue of child support.

III.

Less than two weeks after the entry of the September 13 order, plaintiff filed another motion, seeking relief unrelated to this appeal. In October 2019, defendant sought reconsideration of the September 13 order, contending the judge erred in failing to compel plaintiff to accommodate future "switches" in the parenting time schedule that defendant anticipated he would need for work. In response, plaintiff filed a cross-motion seeking to enforce the September 13 order and the MSA, but she also sought to amend a provision in the MSA to avoid defendant making "last-minute decisions" on enrolling the children in camps "until he can barter tuition for labor (musical concert)." Defendant objected to this proposed amendment, arguing he "made generous barter arrangements with our children's summer camps" so the parties' "children often get to go to camp for free in exchange for my music services."

A-1764-19

On November 15, 2019, both parties appeared self-represented to argue their outstanding motions. After they spoke at length about the relief they sought and expressed concern that their former spouses were "hiding income" to gain an advantage when child support was recalculated, the judge denied their respective motions, including defendant's outstanding counsel fee application and his reconsideration motion. Regarding defendant's reconsideration motion, the judge found there was no basis to revisit her denial of defendant's request to compel his ex-wife to accept his adjustments to the parenting schedule. The judge determined the denial of this relief was not "based on a palpably incorrect basis or theory" because "no[]where in the MSA or in the [PJA] . . . is [plaintiff] obligated to take . . . physical custody of the children when [defendant] has a work obligation."

The judge also addressed the issue of child support left open after entry of the September 13 order. First, she determined that plaintiff's salary, "extrapolated from her pay stubs," was $77,470, so that her weekly earnings were $1,490 per week. Turning to defendant's income, the judge considered his "W-2 job" as well as his earnings from his music business. She referenced his 2018 tax returns and his "2019 pay stubs [from Yeshiva University] . . . to extrapolate his annual salary," and found his "bi-weekly pay from that [W-2]

position [wa]s $1,420, so weekly of course would be half of that. But ultimately, that would total $36,920 [in] salary annually from his W-2 [employment]."

The judge further referenced defendant's 2018 tax returns to calculate his business income and found he "report[ed] a $72,117 profit from which . . . he deduct[ed] $11,459 for use of his private residence in the business" as a recording studio. The judge added that although she was "not suggesting that [the $11,459] [wa]s not tax deductible," she did "not believe it [wa]s deductible for purposes of . . . the child support guidelines." Defendant argued that this particular deduction was for a recording studio he operated out of his home. In response, the judge explained again that the amount was "not deductible for purposes of child support. It is still money that is coming in." After adding defendant's W-2 income to his business income, the judge calculated his total gross income to be $109,037 annually.[2]

---

[2] Despite that defendant admitted bartering his services in exchange for other services, and the judge noted at the November 15 argument that he "had the ability in the past, . . . to secure . . . discounts based on his profession where he exchanges services in return for those discounts," the extent of defendant's bartering was not quantified, nor does it appear the judge considered the effect of defendant's bartering on his income when she recalculated his child support obligation.

 A-1764-19

Based on the parties' combined incomes, the cost of the children's health insurance, and the fact that defendant enjoyed 156 overnights annually with the children, the judge determined that defendant's child support obligation under the Guidelines was $194 per week. Additionally, she found this obligation should be "effective [as of] the filing date of the original motion, which was [July 3,] 2019."

Shortly after rendering her oral decision, the judge returned to the bench, had the parties placed under oath, and stated she needed to clarify her decision regarding child support. She noted that "because child support is being ordered to be retroactive to the date of the filing [of the original motion], . . . [defendant] is entitled to a credit for . . . the child support . . . he has been paying." Similarly, she recognized defendant should be credited for health insurance payments he had made after July 3, 2019. Once she applied these credits, she fixed defendant's arrears at $2,061. Defendant then stated, "I just had one question about the child support calculation which I didn't understand. I understood Your Honor when she said my W-2 [Yeshiva University] income was calculated at $36,400. I'm not sure I understand that calculation, because I know that my contract with YU has never surpassed $30,000." The judge replied that her calculation "was based on the [2019] pay stubs that were submitted, sir." She

10

then concluded the hearing and issued various orders to reflect her decisions on the parties' "series of filings."

IV.

On appeal, defendant presents the following arguments for our consideration:

I. THE TRIAL COURT ERRED IN ITS CALCULATION OF THE DEFENDANT'S CHILD SUPPORT OBLIGATION – W-2 INCOME.

II. THE TRIAL COURT ERRED IN ITS CALCULATION OF THE DEFENDANT'S CHILD SUPPORT OBLIGATION – NOT CONSIDERING LEGITIMATE REAL BUSINESS EXPENSES.

III. THE TRIAL COURT ERRED IN ITS CALCULATION OF THE DEFENDANT'S CHILD SUPPORT OBLIGATION – NOT CONSIDERING THE TRUE FULL INCOME OF THE PLAINTIFF.

IV. THE TRIAL COURT JUDGE WAS BIASED AGAINST THE DEFENDANT AND DID NOT RULE CORRECTLY REGARDING THE [TWENTY] EXTRA PARENTING OVERNIGHTS AS PER THE MSA.

Because defendant's arguments are broad, but the scope of our review is narrow, we begin by emphasizing for the parties' benefit the well-established principles that guide our review of Family Part judgments. The family court "has substantial discretion in making a child support award. If consistent with

11

the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence[.]" Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)). Additionally, we review decisions on reconsideration motions for an abuse of discretion, understanding

> [m]otions for reconsideration are granted only under very narrow circumstances[.] Reconsideration should be used only for those cases which fall into that narrow corridor in which either (l) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (internal citations omitted).]

But "we confer no deference to a trial court's interpretation of the law, which we review de novo[.]" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016).

Regarding the arguments related to child support in Points I, II and III, we note that by statute, parents are presumptively required to provide for the financial support of their unemancipated children. N.J.S.A. 2A:34-23(a). New Jersey has established Child Support Guidelines, and corresponding worksheets, to calculate child support. See Pressler & Verniero, Appendix IX-A and IX-B

to <u>R.</u> 5:6A.  The Guidelines "shall be applied when an application to establish or modify child support is considered by the court."  <u>R.</u> 5:6A; <u>see also</u> <u>Lozner v. Lozner</u>, 388 N.J. Super. 471, 479-80 (App. Div. 2006).  "A court may deviate from the [G]uidelines only when good cause demonstrates that [their] application . . . would be inappropriate."  <u>Id.</u> at 480 (citing <u>Ribner v. Ribner</u>, 290 N.J. Super. 66, 73 (App. Div. 1996)).

Pursuant to Appendix IX-A of the Guidelines, the parent claiming to be the parent of alternate residence (PAR) must establish he or she

> has or is expected to have the child for the substantial equivalent of two or more overnights per week over a year or more (at least [twenty-eight percent] of the time) and . . . can show that separate living accommodations for the child are provided during such times (i.e., evidence of separate living accommodations maintained specifically for the child during overnight stays).
>
> [Pressler & Verniero, Appendix IX-A to <u>R.</u> 5:6A, ¶14(c)(2).]

By contrast, parental visitation is defined as "less than the substantial equivalent of two or more overnights with the child each week (approximately twenty-eight percent of overnights excluding vacations and holidays)."  <u>Id.</u> at ¶13(a).

Here, it is uncontroverted that defendant enjoys 156 overnights with the children annually.  Therefore, he meets the definition of a PAR, and any

recalculation of his child support obligation should have been based on a shared parenting worksheet.  Id. at Appendix IX-B to R. 5:6A.  Because the judge inadvertently used a sole parenting worksheet to calculate defendant's new child support obligation, and by extension, his arrears, we are constrained to reverse those portions of the November 18 order pertaining to defendant's child support obligations.

We recognize that neither party raised this error in his or her merits brief.  Moreover, during argument before us, both parties acknowledged they were unaware of the error and had not supplied the judge with a proposed shared parenting worksheet before she recalculated child support and fixed defendant's arrears.  Therefore, on remand, the parties are encouraged to submit proposed shared parenting worksheets for the court's consideration.

Given our conclusion, we need not discuss at length the balance of defendant's arguments under Points I, II, and III.  Nonetheless, we are compelled to address his contention that the judge erred by inflating his W-2 and business income.

First, as to his W-2 income from Yeshiva University, defendant argues that after the judge reviewed his pay stubs, she "mistak[en]ly divided . . . in half" the "$1,420 . . . displayed on each pay stub," assuming he was paid every other

A-1764-19

week, but he is paid twice monthly. We are hard pressed to fault the judge for this mistake, because although defendant's pay stubs reflect his "[e]arnings are calculated on a [s]emi-[m]onthly basis," defendant handwrote on page four of his October 16, 2019 CIS that he is paid "every other week." Defendant also failed to correct the judge during the November 15, 2019 hearing when she stated "his bi-weekly pay from [his W-2] position is $1,420, so weekly of course would be half of that." Also, at no time during the November 15 hearing did defendant alert the judge to the fact he was paid only ten months out of the year at Yeshiva University, nor does his October 2019 CIS reflect this fact.

Adding to the confusion, defendant's pay stubs showed he earned additional pay of $125 as of October 2019. Further, defendant's October 2019 CIS reflected his handwritten notations that "$4,000 in gross miscellaneous income was now bundled into [his] salary for this year," and he received "overtime pay on rare occasion, but [he] include[d] it in with [his] total income." On remand, the judge should ensure defendant discloses the amount of any "additional" "miscellaneous" or "overtime" pay he has received so that child support can be properly calculated.

Similarly, to the extent defendant concedes in his submissions that "the TABC school in Teaneck . . . did ask to hire [him] to teach some music classes

A-1764-19

at the high school and yes, they did agree to pay [him] on a per class basis," on remand, he should disclose whether he received remuneration from TABC school, and if so, how much he received and when he was paid. Although defendant argues plaintiff only raised the issue of his receiving compensation from TABC "after this [a]ppeal was filed" and this issue "was never submitted in any documents or brought up at trial, so it has no bearing on this [a]ppeal in any way," we disagree. Indeed, for a trial court to be able to calculate a fair child support award, both parties are obligated to reveal all sources of income, as defined under the Guidelines, which includes compensation for services, the operation of a business, and "the value of in-kind benefits." Ibid.; see also N.J.S.A. 2A:34-23(a)(3).

Regarding defendant's Point II, suffice it to say that when a trial court proceeds to calculate the child support obligation of a self-employed obligor, it must carefully review the obligor's income and expenses, understanding that "[i]n most cases," the amount of gross income "will differ from the determination of business income for tax purposes." Ibid.

> Specifically excluded from ordinary and necessary expenses, for the purpose of the[] [G]uidelines are expenses allowed by the IRS for:
>
> . . . .

16

(5) home offices;

(6) entertainment;

(7) travel in excess of the government rate;

(8) non-automobile travel that exceeds standard rates;

. . . .

(11) any other business expenses that the court finds to be inappropriate for determining gross income for child support purposes.

[Ibid.]

Accordingly, we discern no basis to disturb the judge's decision to disallow defendant's home office deduction when calculating his gross income from his music business.

To the extent defendant argues in Point III that the judge erred by failing to consider "the true full income of the plaintiff," we are not persuaded. In fact, while defendant speculates plaintiff earned income from penning "numerous articles," he does not point to evidence the judge overlooked which proved plaintiff was hiding income. Rather, he states plaintiff is "intentionally hiding her independent writing income from [him] and the court, as evidenced from her declaration of [zero dollars] in independent writing income on her 2018 Tax Return, after steadily increasing independent writing incomes in 2016 and 2017

17

respectively," but then he queries, "did she make actual income from her independent writing projects in 2018?" Nevertheless, we trust that on remand, the judge will remind the parties they are obliged to disclose all sources of income, so the judge is properly equipped to fix a fair child support award.

Defendant also contends in Point IV that the judge harbored a bias against him and "did not rule correctly regarding the [twenty] extra parenting overnights as per the MSA." This argument lacks merit. Certainly, "[c]ourts have continuing power to oversee divorce agreements . . . [and to] enforce such agreements only to the extent they [are] fair and equitable." Konzelman v. Konzelman, 158 N.J. 185, 194 (1999) (citations omitted). Also, "[t]he law grants particular leniency to agreements made in the domestic arena," thus allowing "judges greater discretion when interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992).

Here, although defendant argues the judge misinterpreted the provision under the MSA regarding plaintiff's taking up to "[twenty] extra parenting overnights," it is undisputed that provision in the MSA is no longer in effect. In fact, it was replaced by consent with a clause in a PJA which provided for a "mutual 'switch'" in parenting time when defendant had a work conflict. (Emphasis added). A "mutual" switch, by its very definition, is not a "switch"

effectuated by one party unilaterally dictating to another party when the switch must occur. Thus, we conclude the judge did not err in denying defendant's request to compel plaintiff to accept his proposed modifications to the parenting time schedule. Instead, we affirm paragraph twelve of the amended January 15, 2020 order reflecting this denial, and similarly affirm paragraph one of the amended November 18, 2019 order denying defendant's motion for reconsideration on this issue.

Finally, having duly considered the voluminous record in this matter, including the transcripts of oral argument from the September 13 and November 15, 2019 hearings, we are satisfied the judge demonstrated no bias toward either party. Rather, she was evenhanded in her treatment of the parties, correctly denied the bulk of the relief they requested in their "series of filings," and exercised appropriate control of her courtroom while also affording the parties significant latitude in their pro se presentations when they strayed from their formal arguments. As we have previously cautioned, "[b]ias cannot be inferred from adverse rulings against a party." Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) (citing Matthews v. Deane, 196 N.J. Super. 441, 444-47 (Ch. Div. 1984)).

A-1764-19

In sum, we: reverse only that portion of the November 18, 2019 order fixing defendant's child support obligation at $194 per week and his arrears at $2,061; affirm the January 15, 2020 order; and remand this matter for further proceedings. Due to the passage of time since defendant's child support obligation was fixed, not to mention the concerns raised by the parties regarding the veracity of each other's financial information, the remand judge is authorized to direct the parties to supplement their financial information before the judge recalculates the child support award and the amount of any child support arrears.

To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1764-19