85 A.3d 425

GAYLE CLEMENTI, PLAINTIFF, v. FRANK CLEMENTI, DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided August 13, 2013.

530

*Peter J. Bronzino,* for plaintiff.

No appearance by defendant.

L.R. JONES, J.S.C.

This case addresses how defendant's non-appearance at a default divorce proceeding impacts plaintiff's burden of proof regarding equitable distribution. For the reasons set forth in this opinion, the court holds the following:

1) When a defaulting defendant fails to participate in a divorce proceeding, the plaintiff is not automatically entitled to a default judgment granting all requests regarding equitable distribution. Rather, plaintiff still has an ongoing obligation to persuade the court, by a preponderance of the evidence, that the proposal for equitable distribution is fair and equitable under the specific facts of the case;

2) Defendant's failure to object to plaintiff's proposed equitable distribution in a notice of final judgment is not necessarily the same as an express written consent, and generally cannot be the sole and exclusive basis for a court to determine that the proposal is fair, reasonable, and equitable. However, defendant's failure to object is one of many relevant factors a court may appropriately consider in determining the overall reasonableness of plaintiff's proposal for equitable distribution.

3) The value of a marital asset, relative to the remainder of the marital estate, is a legitimate and significant factor for a court to consider in determining whether a defaulting party, who has not appeared in a divorce proceeding, may lose all interest in such asset in favor of the appearing party by way of equitable distribution.

## FACTUAL BACKGROUND

Plaintiff and defendant married in 1973, and lived as husband and wife for nearly forty years. They had no children, and jointly operated a store as their primary source of employment and income. On March 28, 2013, plaintiff filed for divorce on the no-fault ground of irreconcilable differences. In her complaint, plaintiff sought alimony as well as equitable distribution of marital assets and debts.

On April 29, 2013, the Ocean County Sheriff's Department served defendant with plaintiff's complaint. Defendant failed to file a responsive pleading within thirty-five days or thereafter, and

plaintiff filed a proper request to enter default on June 7, 2013. Subsequently, defendant failed to file a motion to vacate the default, or otherwise participate in the litigation. Accordingly, the court scheduled default proceedings for August 13, 2013.

Thereafter, on or about July 3, 2013, plaintiff properly filed and served upon defendant a notice of proposed final judgment, along with a detailed Case Information Statement ("CIS"), in accordance with *Rule* 5:5–10. At the August 13, 2013, default hearing, plaintiff appeared with counsel. Defendant did not appear. Plaintiff offered her notice of proposed final judgment and CIS into evidence.

In her written notice of final judgment, as well as in court, plaintiff sought sole ownership of the parties' marital home. The house appeared to be the parties' largest asset, with no mortgage and an estimated value of approximately $200,000. Defendant did not file any objection or other response to plaintiff's request, and did not appear at the scheduled court proceeding.

## *LEGAL ANALYSIS*

When a plaintiff serves a notice of final judgment upon a defendant requesting specific equitable distribution of assets and debts, and the defendant fails to object or respond, it is not uncommon for such plaintiff to thereafter contend that defendant's lack of objection constitutes a consent or acquiescence to the plaintiff's specific requests. As a matter of equity, however, a defendant's failure to object or respond to a notice of final judgment cannot automatically be treated as the identical twin of consent, as if the parties had executed a written settlement agreement reflecting a meeting of the minds on specific terms. To the contrary, while a failure to respond and entry of default may potentially bar a defendant from fully participating in a divorce proceeding, and may arguably be evidence of consent, the family court still ultimately maintains the authority to adjudicate equitable distribution in a manner which is fair under the circumstances.

The goal of equitable distribution is to bring about a just division of marital assets. *Steneken v. Steneken,* 183 *N.J.* 290, 299, 873 *A.*2d 501 (2005). Even in the case of a defendant's default and non-appearance, the plaintiff still carries the burden of persuading the family court, through testimony and/or other available evidence, that his or her proposed distribution of assets and debts is fair and equitable. *See Johnson v. Johnson,* 92 *N.J.Super.* 457, 464, 224 *A.*2d 23 (App.Div.1966); *Scott v. Scott,* 190 *N.J.Super.* 189, 195, 462 *A.*2d 614 (Ch.Div.1983) (entry of default may preclude a defendant from offering testimony in defense, but does not obviate the obligation of plaintiff to affirmatively furnish evidence on issues presented).

Effective September 1, 2009, default divorce proceedings are governed by *Rule* 5:5–10 of the *New Jersey Court Rules,* which states the following:

> In those cases where equitable distribution, alimony, child support and other relief are sought and a default has been entered, the plaintiff shall file and serve on the defaulting party, in accordance with R. 1:5–2, a Notice of Proposed Final Judgment ... not less than 20 days prior to the hearing date. The Notice shall include the proposed trial date, a statement of the value of each asset and the amount of each debt sought to be distributed and a proposal for distribution, a statement as to whether plaintiff is seeking alimony and/or child support and, if so, what amount, and a statement as to all other relief sought, including a proposed parenting time schedule where applicable. Plaintiff shall annex to the Notice a completed filed Case Information Statement in the form set forth in Appendix V of these Rules. When a written property settlement agreement has been executed, plaintiff shall not be obligated to file such a Notice.

The content of *Rule* 5:5–10 reflects a clear difference in necessary proofs between a settlement proceeding where the defendant has signed an agreement, and a default proceeding where the defendant does not appear or participate at all. In a default proceeding, the court generally still must receive additional information and evidence from the participating plaintiff, such as, at the very least, a case information statement so the court may learn more about the financial circumstances of the parties in striving to render a fair and equitable judgment. As per the *Rule,* however, such additional evidence is not mandatory in the case of a written settlement between the parties.

In a civil proceeding, plaintiff's burden of proof is generally the preponderance of the evidence standard.[1]  *See N.J.R.E.* 101(b)(1); *Liberty Mut. Ins. Co. v. Land,* 186 *N.J.* 163, 168, 892 *A.*2d 1240 (2006); *State v. Seven Thousand Dollars,* 136 *N.J.* 223, 238, 642 *A.*2d 967 (1994).  Under this standard, a litigant must establish that a desired inference is more probable than not.  Biunno, *Current N.J. Rules of Evidence,* comment 5a on *N.J.R.E.* 101(b)(1) (2014).  Divorce is a civil action.  Thus, it is logical to conclude that in a default divorce proceeding where plaintiff seeks a judgment of equitable distribution, plaintiff's burden is to establish by a preponderance of the available evidence that the proposed distribution of assets and debts is equitable, rather than inequitable.[2]

It must be noted, however, that plaintiff's obligation to carry this burden of proof does not mean that defendant's default, and failure to participate in the legal proceedings, is irrelevant.

---

[1] There are some exceptions in certain civil actions, where the burden of proof is the higher, "clear and convincing evidence" standard.

[2] There may be some factual circumstances where the burden of proof may appropriately shift to the non-appearing defendant, such as where the defaulting defendant is in exclusive possession and control of the evidence necessary for a court to determine the value and other relevant information about the asset in question.  For example, this situation may occur when there is a marital business which is solely in the name and control of the defaulting defendant, and he or she has sole access to the books and records and other financial data and operating information and refuses to provide same for review.  In such cases, application by the plaintiff for alternative equitable pre-judgment relief such as compelling the defendant to appear in court or at a deposition, or possibly the appointment of a receiver, may be appropriate.  Other equitable relief may be fair and reasonable as well given the facts of a case.  New Jersey family courts have in other contexts firmly recognized the equitable principle that when evidence is primarily in the hands of one party, the court may impose a burden of proof upon that party to supply such evidence.  *See Ozolins v. Ozolins,* 308 *N.J.Super.* 243, 248–49, 705 *A.*2d 1230 (App.Div.1998); *Frantz v. Frantz,* 256 *N.J.Super.* 90, 93, 606 *A.*2d 423 (Ch.Div.1992).  This principle, however, is not relevant in the present case, where the issue is equitable distribution of a marital home, and both parties have equivalent access to evidence and information regarding the value of same.

Nor does it mean that defendant can be permitted to "stonewall" or obstruct plaintiff's right to seek equitable distribution of marital property merely by not responding to divorce pleadings and refusing or otherwise failing to show up for court. To the contrary, a court may fairly and equitably consider defendant's failure to appear or object to a plaintiff's proposed distribution as one of many material factors in attempting to reach an equitable result.

That being stated, defendant's default and lack of formal objection cannot logically or justly be the only factor for the court's consideration in adjudicating equitable distribution. Rather, the court must still consider the overall fairness of plaintiff's proposed distribution by applying the statutory criteria for analysis of equitable distribution set forth by the New Jersey Legislature in *N.J.S.A.* 2A:34–23.1. Absent a written settlement agreement, this process is required even when the analysis is based largely or exclusively upon the unopposed and uncontroverted testimony and evidence presented by the participating plaintiff. As part of such process, however, the court may also consider, as a specific additional factor in the overall analysis, defendant's failure to appear or object to plaintiff's proposed distribution, or to provide any evidence against plaintiff's claims.

The statutory factors for a court to consider on issues of equitable distribution are as follows:

a. The duration of the marriage or civil union;

b. The age and physical and emotional health of the parties;

c. The income or property brought to the marriage or civil union by each party;

d. The standard of living established during the marriage or civil union by each party;

e. Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f. The economic circumstances of each party at the time the division of property becomes effective;

g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to

become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

h. The contribution by each party to the education, training or earning power of the other;

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j. The tax consequences of the proposed distribution to each party;

k. The present value of the property;

l. The needs of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m. The debts and liabilities of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonable medical or educational costs for a spouse, partner in a civil union couple or children;

o. The extent to which a party deferred achieving their career goals; and

p. Any other factor which the court may deem relevant.
[*N.J.S.A.* 2A:34-23.1.]

The final statutory factor to consider is "any other factor which the court may deem relevant." *N.J.S.A.* 2A:34-23.1(p). In a default proceeding, this "catch-all" factor may logically include judicial recognition of the fact that a defendant: (a) was provided notice of the proceeding and of plaintiff's specific requests for equitable distribution, and (b) did not affirmatively oppose the requests or otherwise avail himself or herself of the opportunity to contest the requests, or present evidence that the proposed distribution is inequitable, or otherwise be heard.

■ In short, when a properly served defendant defaults and does not participate in a divorce proceeding, a court may appropriately make determinations based upon plaintiff's available evidence and the lack of any opposing evidence from defendant. The court may analyze all statutory factors, as well as any additional relevant evidence such as defendant's lack of objection, and reach conclusions based upon the persuasiveness of the unopposed evidence submitted by plaintiff. In doing so, the court need not speculate as to what testimony or other contrary evidence defen-

dant *might* have offered had he or she participated in the litigation.

Reason mandates, however, that even in a default proceeding where the defendant does not appear, the court must still be inquisitive in analyzing the fairness and reasonableness of plaintiff's request for equitable distribution. This concept is especially true when a request appears on its face to be heavily slanted and skewed in favor of the participating party. For example, in a hypothetical default case where the plaintiff requests all of the marital assets while leaving the defendant with all of the marital debt, the plaintiff still must carry the burden of demonstrating to the court, by a preponderance of the evidence, how and why such an extraordinarily one-sided request is fair and appropriate under the specific circumstances of the case.

In practice, it is somewhat rare to find a default case where a litigant actually requests 100 percent of all marital assets while rejecting all of the debt. More commonly, a plaintiff may request a somewhat balanced allocation of relatively minor assets, while simultaneously requesting sole ownership of one or more major assets. When a party requests complete ownership of a very substantial joint asset, such as a mortgage-free marital home, such a request necessarily warrants thorough analysis and scrutiny, even in a default situation.

In such circumstance, while all of the statutory factors under *N.J.S.A.* 2A:34–23.1 are relevant, of particularly heightened importance is the eleventh factor, i.e., "the present value of the property" relative to the value of the remainder of the marital estate. The reason why this factor is extremely relevant is the principle that, in general, equity abhors forfeiture. *See Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.,* 100 *N.J.* 166, 182, 495 *A.2d* 66 (1985); *McQueen v. Brown & Cook,* 342 *N.J.Super.* 120, 130, 775 *A.2d* 748 (App.Div.2001). Moreover, logic and common sense lead to the further conclusion that the greater the relative financial value of the asset as compared to the remainder of the marital estate, the greater the potential economic inequity

and damage when a party loses his or her entire financial interest in such asset to the sole and exclusive benefit of the other party. This point is relevant not only in a contested proceeding, but in a default proceeding as well. Put another way, there is a fundamental difference between a defaulting person losing interest in a relatively small asset, as compared to losing interest in a mortgage-free marital home, especially when the equity in such home constitutes a huge percentage of the parties' entire marital estate and financial holdings.

Of course, in the realm of New Jersey law regarding equitable distribution, it has long been established that neither party is automatically entitled to fifty percent of any specific asset, including the marital home. *See Rothman v. Rothman,* 65 *N.J.* 219, 232–33 n. 6, 320 *A.*2d 496 (1974).[3] *See also Daeschler v. Daeschler,* 214 *N.J.Super.* 545, 553, 520 *A.*2d 777 (App.Div.1986), (citing *Rothman,* and ultimately dividing the parties' marital home on an eighty percent (wife), twenty percent (husband) basis). However, in a case such as the present one, where the plaintiff seeks a 100% (plaintiff) 0% (defendant) distribution of the parties' home in a default scenario, a court of equity must meticulously analyze the request in terms of fairness. The court notes that New Jersey has a very strong and long-standing commitment to the principle of equitable distribution. *See Vander Weert v. Vander Weert,* 304 *N.J.Super.* 339, 348, 700 *A.*2d 894 (App.Div.1997). Further, once a divorce complaint is filed, the assets in the marital estate are in a practical sense, *in custodia legis. Id.* at 349, 700 *A.*2d 894. This

---

[3] In *Rothman,* 65 *N.J.* at 232–33, 320 *A.*2d 496, Justice Pashman wrote:

... (t)he suggestion has been offered that in undertaking to effect an equitable distribution of marital assets, the trial court should, to establish a starting point, presumptively assign some proportion, generally mentioned as 50%, of all eligible assets to each spouse. We disapprove of this proposal. No basis for it is to be found in the statute itself, it would import into our law concepts now held chiefly, if not solely, in those states where community property law principles have gained acceptance, and we foresee that it might readily lead to unjust results. Rejecting any simple formula, we rather believe that each case should be examined as an individual and particular entity.

principle certainly applies to the parties' marital home in the present divorce litigation.

Ultimately, in a court of equity, all cases are fact sensitive. Facts, not principles of law, decide cases. *Bendix Corp. v. Director, Division of Taxation,* 125 *N.J.* 20, 41, 592 *A.2d* 536 (1991). Depending on the circumstances, an equitable adjustment of the rights of the parties may vary from one case to another. *Vasquez v. Glassboro Serv. Ass'n,* 83 *N.J.* 86, 108, 415 *A.2d* 1156 (1980). Principles of law are not to be applied in the abstract, but must be considered in light of the facts in an individual case. *Hanover Ins. Co. v. Franke,* 75 *N.J.Super.* 68, 74, 182 *A.2d* 164 (App.Div.1962), *certif. denied,* 38 *N.J.* 308, 184 *A.2d* 421 (1962). Accordingly, from a hypothetical standpoint, there may be some cases where the totality of the specific factual circumstances support a conclusion that it is fair and equitable to award the marital home and its equity to one party over the other. By way of illustration and not limitation, if most or all of the equity in the home came from one party's pre-marital or other assets otherwise immune from equitable distribution, such distribution may possibly be appropriate. Further, if one party is receiving an exclusive interest in other marital assets of substantial value (though not necessarily exactly equal in value to the marital home), such balancing of comparative assets might support granting the other party sole ownership of the house.

Still further, if the evidence reflects that one party wrongfully took, dissipated, or depleted other significant marital assets to the other party's economic detriment, without the other party's knowledge and consent, such conduct might in some cases fairly justify awarding the other party the full equity in the marital home as a manner of equitable reimbursement or compensation. Indeed, even when there has been no wrongful conduct by either litigant, if the facts reflect that one party's financial circumstances are substantially inferior to that of the other party following a long term marriage and divorce (based upon comparative employability, comparative income capacity, monetary resources, disability,

health, age, education, and/or other relevant factors), the overall equities may still in some cases potentially support the granting of the equity in the marital home to one party over the other.

It must be noted, however, that in none of these examples is the financially compromised party automatically entitled to receive full ownership and possession of the asset. A decision on equitable distribution of an asset is always subject to the court's discretion following analysis of the specific facts at hand. Just as there are hypothetical scenarios where there might be fairness in granting one party the full interest in a marital home, there are just as many scenarios where such a result would be inequitable and unfair to the party in the financially superior position. No two cases or situations are exactly the same, and the mere fact that a supported spouse has less income or financial resources than a supporting spouse does not in any fashion automatically entitle the supported spouse to sole ownership of any marital asset, including but not limited to the marital home.

In the present case, plaintiff's request for the full interest in the marital home may or may not be equitable. There is insufficient evidence at this juncture for the court to fully analyze the basis for the claim. For the foregoing reasons, the court will reschedule the hearing in this matter to September 23, 2013, when plaintiff shall carry the burden of persuasion to convince the court, by a preponderance of the evidence, why it is fair and equitable that she receive the marital home in the divorce. Plaintiff will serve notice upon defendant of the new hearing date within five days. If defendant again fails to appear or object, the court may consider such continued lack of objection as a relevant factor, along with all of the other statutory factors, in determining the reasonableness of plaintiff's proposal for equitable distribution. In the interim, the parties' marital home remains *in custodia legis* pending further order of the court.[4]

4 Subsequent to the court's decision and accompanying court order, defendant appeared in this matter at the next scheduled court date. Thereafter, the parties

542

voluntarily settled all issues, including equitable distribution of the marital home, under terms which differed somewhat from those originally urged by plaintiff, but which were deemed acceptable by both parties on the record.