**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0609-17T1

MARIA A. ROTH,

      Plaintiff-Appellant,

v.

STANLEY ROTH,

      Defendant-Respondent.

_____

      Argued October 1, 2018 – Decided October 15, 2018

      Before Judges Sabatino, Haas and Mitterhoff.

      On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0078-16.

      Maria A. Roth, appellant argued the cause pro se (Stephanie Palo, on the briefs).

      Ronald H. Carlin argued the cause for respondent (LaRocca Hornik Rosen Greenberg & Patti, LLC, attorneys; Ronald H. Carlin, on the brief).

PER CURIAM

Plaintiff Maria Roth appeals from the Family Part's August 21, 2017 order denying her motion for reconsideration of the trial judge's equitable distribution determinations in the June 8, 2017 Final Judgment of Divorce (FJOD) concerning an eyeglass store the couple operated during their marriage. We affirm.

The parties married in 1980. Both of their children are emancipated. During their marriage, the parties operated Monte Eyewear, LLC, a franchisee of the national Cohen's Fashion Optical chain (Cohen's). The business was located in the Bronx. Defendant was the sole shareholder in the company, and managed the store's daily operations. Plaintiff acted as a bookkeeper, and handled the business's finances as well as the parties' personal bills.

Toward the end of the marriage, plaintiff began removing funds from the company's accounts in the early morning hours, ostensibly to pay the family's bills. When defendant learned of these transactions in April 2015, he stopped depositing the company's cash receipts in the business account, and assumed responsibility for paying the parties' bills. Between April 2015 and March 2016, when defendant dissolved the company, plaintiff alleged that defendant dissipated $126,733 of the business's receipts for his own purposes.

A-0609-17T1

Plaintiff filed her complaint for divorce in July 2015. Although defendant filed an answer, he thereafter failed to comply with his discovery obligations, and refused to provide plaintiff with Monte Eyewear's franchise close-out sheets, invoices, and cash receipts. As a result, the trial court suppressed defendant's defenses and the matter proceeded to a default hearing pursuant to Rule 5:5-10.

Judge Angela White Dalton presided at the hearing. She permitted defendant to cross-examine plaintiff concerning her testimony at the hearing, and the documents upon which she relied. However, the judge did not permit defendant to present evidence or witnesses, offer affirmative defenses, or be directly examined by his own attorney.

At the time of the hearing, the parties were still residing in the marital home. During cross-examination by defendant's attorney, plaintiff acknowledged that prior to April 2015, when she was using Monte Eyewear's business account to pay the family's bills, "there wasn't a whole lot left over" at the end of each month.

A-0609-17T1

According to plaintiff, the business earned $188,432.59[1] for the twelve-month period between April 1, 2015 and March 11, 2016.  From this amount, plaintiff alleged that defendant siphoned off $126,733 for his own purposes.  As part of her Notice of Proposed Final Judgment (NPFJ), plaintiff asked that defendant be ordered to pay her half of this amount ($63,386) in equitable distribution.

Plaintiff was not questioned about the family's monthly bills on direct examination.  However, she provided this information in response to defendant's attorney's questions on cross-examination.  Although plaintiff stated she was uncertain as to amounts she normally paid for all the couple's bills, plaintiff was able to provide details concerning most of them.

Plaintiff testified that when she was in charge of using the company's funds for the family's bills, she took approximately $7000 in cash each month to cover the family's regular expenses, including the mortgage, food, and other routine obligations.  Plaintiff also stated that each month she paid:   $1400 for health insurance; $350 for car payments; $700 for car insurance; $2000 for rent for the business; and $350 for gas so defendant could drive back and forth to the

---

[1]  This averages to $15,702.71 per month.

A-0609-17T1

Bronx. These expenses alone totaled $11,800 per month, which was $141,600 per year. She also conceded that after defendant took over this responsibility, these bills continued to be paid, although she claimed she did not know how this occurred.

Through her testimony, plaintiff accounted for all but $46,832.59[2] of the store's total gross proceeds of $188,432.59 between April 2015 and March 2016. When defense counsel questioned plaintiff about the amounts paid each month to vendors for the eyeglasses and other merchandise sold by Monte Eyewear, and for business equipment, business insurance, and the note on the store, plaintiff stated she was not familiar with these expenses. However, she did acknowledge that the company was required to pay a 10% franchise fee on its proceeds each month to Cohen's, but she was unaware whether defendant had continued to do so.

On the basis of plaintiff's testimony and the documentation she supplied on this issue as part of her NPFJ as required by Rule 5:5-10,[3] Judge White Dalton

---

[2] $188,432.59 - $141,600 = $46,832.59.

[3] Plaintiff was the only witness at the default hearing. She did not present any expert testimony.

A-0609-17T1

rendered a detailed oral decision denying plaintiff's claim that defendant dissipated funds from Monte Eyewear.[4] The judge found that plaintiff failed to demonstrate that defendant took the funds for his own use rather than for the payment of the family's personal and business expenses.

In so ruling, the judge stated she had consulted an industry manual of the type used by "CPAs [and] forensic accountants" who determine the value of businesses. According to this manual, "the cost of goods sold in an optical goods store making a gross of less than $250,000 a year in revenue, the percentage of the cost of goods sold is [61%] of the revenue that comes in. . . ." Plaintiff alleged that Monte Eyewear had $188,432.59 of gross revenues between April 2015 and March 2016. Using the 61% figure identified by the judge, this meant that the business would have paid $114,943.88 of that amount for the eyeglasses and merchandise it sold, leaving only $73,488.71 to cover the other $141,600 in monthly expenses identified by plaintiff at the hearing.

Under these circumstances, the judge found that even if defendant had taken money from the business, "the money had to have been going back to pay for household expenses. And as a result, . . . plaintiff benefitted from that . . .

---

[4] The judge granted most of plaintiff's other requests in her NPFJ, including alimony, other equitable distribution of marital assets, and counsel fees.

A-0609-17T1

because the bills were paid. The mortgage was paid. Things were paid." Therefore, the judge concluded that the now-closed business clearly had no value, and plaintiff was not entitled to recover any additional funds from defendant concerning this former marital asset. The judge then entered a FJOD detailing her determinations on all of the issues resolved by her at the default hearing.

Plaintiff thereafter filed a motion for reconsideration of the portions of the FJOD denying her claim for half of the funds defendant allegedly took from the business for his own uses. Plaintiff alleged she was unprepared to answer defense counsel's questions about the bills she paid when she was in charge of paying the family and business's bills and, therefore, she could not be sure that the answers she gave at the hearing were accurate. She also produced records of her personal bank account and the parties' joint account, which were not submitted into evidence at the hearing, but were the subject of questioning.

Judge White Dalton denied plaintiff's motion. In a thoughtful written decision, the judge found that plaintiff failed to show "that this court's decision was based on [a] palpably incorrect basis, or did not consider or failed to failed to appreciate the significance of probative, competent evidence." This appeal followed.

A-0609-17T1

On appeal, plaintiff reiterates the same arguments she unsuccessfully pressed before Judge White Dalton on her motion for reconsideration. She argues that the judge abused her discretion by rejecting her claim that even though the household and business bills continued to be paid, defendant really took the funds and used them for his own purposes. Plaintiff also argues that the judge erred in permitting defendant's attorney to cross-examine her at the default hearing. We disagree.

Established precedents guide our task on appeal. We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

While we owe no special deference to the judge's legal conclusions, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), "we 'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or

A-0609-17T1

inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). We will only reverse the judge's decision when it is necessary to "ensure that there is not a denial of justice because the family court's conclusions are []clearly mistaken or wide of the mark." Id. at 48 (alteration in original) (internal quotations omitted) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Further, we review the denial of a motion for reconsideration to determine whether the trial court abused its discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "Reconsideration cannot be used to expand the record and reargue a motion." Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). A motion for reconsideration is meant to "seek review of an order based on the evidence before the court on the initial motion . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Ibid.

For these reasons, reconsideration should only be granted in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious

that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]" Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990). Therefore, we have held that "the magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010).

After reviewing the record in light of these principles, we discern no basis for disturbing Judge White Dalton's reasoned determination denying plaintiff's motion for reconsideration. We therefore affirm the August 21, 2017 order substantially for the reasons that Judge White Dalton expressed in her comprehensive written opinion. We add the following brief comments.

Contrary to plaintiff's contentions, the judge did not ignore the facts developed by plaintiff at the default hearing, or the legal arguments she presented concerning them. It is well established that "[w]hen a defaulting defendant fails to participate in a divorce proceeding, the plaintiff is not automatically entitled to a default judgment granting all requests regarding equitable distribution." Clementi v. Clementi, 434 N.J. Super. 529, 532 (Ch. Div. 2013). Instead, the "plaintiff still has an ongoing obligation to persuade

10

the court, by a preponderance of the evidence, that the proposal for equitable distribution is fair and equitable under the specific facts of the case[.]"  Ibid.

The judge properly found that based on the testimony and documentary evidence she presented at the hearing, plaintiff failed to meet this burden of proof.  As detailed above, plaintiff's own testimony established that $141,600 in bills were paid, although she alleged she did not know how this occurred.  The judge concluded that the $46,832.59 difference between that amount, and the $188,432.59 gross proceeds plaintiff alleged the business brought in during this one-year period, was more than accounted for by the amounts the company had to pay the vendors that sold it the eyeglasses and other merchandise it in turn marketed to its customers.  Plaintiff argues the 61% cost-of-goods percentage applied by the court was too high.  But even if, hypothetically, a percentage of, say, only half that 61% level were applied instead, [5] the math would have yielded the same conclusion and fully account for the use of the $46,832.59 balance.  Moreover, no forensic expert proof was presented to the contrary.

Thus, plaintiff simply failed to meet her burden of proof by a preponderance of the evidence that defendant took business funds, and used them for his own purposes rather than paying the family's bills that plaintiff

---

[5] .305 X $188,432 = $57,471.76.

A-0609-17T1

acknowledged were paid. Therefore, the judge did not abuse her discretion by denying the equitable distribution plaintiff sought on this issue, Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978) (stating that we apply an abuse of discretion standard when a party challenges an equitable distribution award), or the motion for reconsideration that is the only subject of this appeal. Palombi, 414 N.J. Super. at 288.

Plaintiff argues that the judge failed to consider that defendant received a $100,000 settlement from a former employer arising out of a dispute over unpaid commissions, and may have used those monies to pay the personal expenses while he was allegedly dissipating business funds. This argument fails for two reasons. First, plaintiff's theory is nothing more than speculation, unsupportable by any evidence in the record. Perhaps more importantly, the judge ordered defendant to pay half of the settlement ($50,000) to plaintiff in equitable distribution from his share of the proceeds from the sale of the former marital home or another property owned by the parties.[6]

Plaintiff also contends that the judge improperly gave short shrift to her allegation that she, rather than defendant, was still actually paying some of the

_____

[6] The judge also ordered defendant to take full responsibility for paying $44,000 that the business owed Cohen's. However, Cohen's eventually forgave the debt.

A-0609-17T1

family's expenses after defendant took over this responsibility. However, this claim, and the documents plaintiff presented for the first time with her motion in an attempt to support it, could have reasonably been gathered and presented by plaintiff and her attorney at the default hearing. Moreover, none of this information was a "game changer." Palombi, 414 N.J. Super. at 289. Therefore, the judge properly denied plaintiff's motion for reconsideration. Cummings, 295 N.J. Super. at 384.

Finally, we reject plaintiff's argument that the judge erred by permitting defendant's attorney to cross-examine her at the default hearing. As noted above, although the entry of default ordinarily precludes a defendant from offering testimony or other evidence at the Rule 5:5-10 hearing, it does not obviate the plaintiff's obligation to furnish proof on the issues. Scott v. Scott, 190 N.J. Super. 189, 195-96 (Ch. Div. 1983). And, in most cases, our courts have permitted a defaulting defendant to cross-examine the plaintiff and his or her witnesses to assist the trial judge in determining whether the plaintiff's proofs are "insufficient in law or fact to support the judgment which the plaintiff seeks." Fox v. Fox, 76 N.J. Super. 600, 604 (Ch. Div. 1962).

Under the circumstances presented in this case, we discern no abuse of discretion by Judge White Dalton allowing defendant's limited participation at

A-0609-17T1

the hearing. Plaintiff did not even object to defense counsel's cross-examination until the second day of the hearing, and did not raise this argument in her motion for reconsideration. Contrary to plaintiff's contention, the judge did not reward defendant for his recalcitrance in providing discovery, because she prevented him from presenting any testimony or evidence of his own, making an opening or closing statement, or offering any affirmative defenses. Plaintiff was successful on most of the requests she made in her NPFJ, and was unsuccessful on her dissipation claim only because the proofs she provided did not establish her right to equitable distribution by a preponderance of the evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0609-17T1