**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5389-16T2

JOSEPH KOENIG and
LAURIE KOENIG,

      Plaintiffs-Respondents,

v.

HOFFMAN DIMUZIO, JOSEPH
SLACHETKA, and JAMES
CARTER,

      Defendants.

_____

CADLES OF GRASSY
MEADOWS II, LLC,

      Appellant.

_____

Submitted September 20, 2018 – Decided  January 4, 2019

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-5180-13.

Schumann Hanlon, LLC, attorneys for appellant (David K. DeLonge, on the briefs).

Helmer, Conley & Kasselman, PA, attorneys for respondents (Alexander J. Wazeter, of counsel and on the brief).

PER CURIAM

Appellant Cadles of Grassy Meadows II, LLC (Cadles), is a judgment creditor of plaintiff Joseph Koenig. Cadles levied on Joseph Koenig's interest in a legal malpractice case that he and his wife, plaintiff Laurie Koenig, brought against defendants Hoffman DiMuzio, Joseph Slachetka and James Carter (collectively "defendants"). Plaintiffs settled the malpractice case for $450,000 and sought an order apportioning fifty percent of the settlement amount to each plaintiff. Cadles cross-moved for an apportionment of the settlement based on the relative damages suffered by each plaintiff resulting from the alleged malpractice. The court granted plaintiff's motion and denied Cadles's cross-motion. Because we are convinced the court erred by applying the wrong legal standard to determine the apportionment, we reverse and remand for further proceedings.

The pertinent facts are not in dispute. Joseph Koenig was in the trucking business for many years and at various times owned three trucking companies,

J.K. Enterprises, Koenig Incorporated[1] and Joseph F. Koenig, Inc.  Confronted with financial difficulties in 2007, Joseph Koenig sought to sell eleven trucks to raise capital, but he could not do so because he did not have the titles to the trucks.  He retained defendants to obtain the titles from the financial institution that he believed possessed them, but defendants allegedly failed to take any action on his behalf.  He alleged in the malpractice case that defendants' failure prevented him from selling the trucks and continuing to obtain the credit required to profitably operate his businesses.  He also claimed defendants permitted several default judgments to be entered against him and his companies in cases filed by creditors by failing to file answers.

Joseph Koenig and Laurie Koenig married in 2007.  The following year, Joseph Koenig transferred his interests in their marital home and two rental properties to Laurie Koenig.  One of Joseph Koenig's judgment creditors filed suit, claiming the transfers were made to avoid his creditors.  The court appointed a receiver for the properties who was charged with collecting the rental income.  Joseph Koenig and Laurie Koenig later alleged that they retained defendants to represent them in the matter, defendants failed to adequately do

---

[1]  Koenig Incorporated is also referred to as Koenig Inc. in the papers submitted to the motion court.

so and that, as a result, they lost rental income and suffered other damages due to defendants' alleged malfeasance.

In 2009, a Joseph Koenig creditor, The Bank, obtained an $816,109.23 judgment against Joseph Koenig, a $657,247.21 judgment against Koenig Incorporated and a $158,862.02 judgment against J.K. Enterprises. The judgment was entered in Atlantic County and subsequently assigned to Cadles.

In December 2013, Joseph Koenig and Laurie Koenig filed a legal malpractice action against defendants in Camden County. Eleven months later, Cadles levied on Joseph Koenig, Koenig Incorporated and J.K. Enterprises's interests in the claims and causes of action in the legal malpractice case. The case was subsequently settled for $450,000 and structured to separately allocate $225,000 each to Joseph Koenig and Laurie Koenig. They executed separate general releases in favor of defendants in exchange for receiving $225,000 each.

Cadles filed a motion in the Atlantic County matter requesting a turnover of the $450,000 settlement from the Camden County legal malpractice action. The court entered an order denying the motion without prejudice.

Joseph Koenig and Laurie Koenig filed a motion in Camden County requesting a plenary hearing to apportion the settlement proceeds. In support of the motion, their counsel explained that Cadles served a writ of execution

A-5389-16T2

against Joseph Koenig during the malpractice action and following the settlement took the position that Laurie Koenig was not entitled to any of the settlement proceeds. Counsel certified that Cadles demanded all of the settlement proceeds be placed in escrow and requested a plenary hearing "for the court to apportion the net proceeds." Cadles filed a cross-motion to limit the plenary hearing, arguing it was entitled to levy on the settlement proceeds apportioned to Joseph Koenig because it had a judgment against him and that a plenary hearing was required only to apportion the proceeds that were to be paid to Laurie Koenig under the settlement.

The court held a hearing, but the parties did not call any witnesses. The parties agreed Cadles was entitled to the net proceeds from the $225,000 paid to Joseph Koenig and that the only issue presented was whether the remaining settlement proceeds should be apportioned to Laurie Koenig.[2] The parties stipulated to certain facts and subsequently made written submissions supported by exhibits.

---

[2] Following deductions for counsel fees and costs, Joseph Koenig was entitled to $137,943.10 as the net proceeds from the $225,000 apportioned to him under the settlement. The proceeds due to Laurie Koenig from the $225,000 apportioned to her under the settlement is $131,276.42. The difference between the two amounts is attributable to fees and costs Laurie Koenig directly paid during the litigation.

A-5389-16T2

The court held a second hearing and heard oral argument. Cadles agreed that its writ of execution "does not purport or intend to reach the rightful property of Laurie Koenig." Laurie Koenig argued the equal apportionment of the settlement proceeds was appropriate because the proceeds were for lost marital income that she and Joseph Koenig would have otherwise received, and she shared equally in the loss of the income as Joseph Koenig's spouse.

Cadles asserted that the losses claimed in the malpractice action were primarily attributable to losses suffered by Joseph Koenig's businesses. Cadles argued that the settlement's equal apportionment of the proceeds was contrived to limit Cadles' recovery under its writ of execution on Joseph Koenig's malpractice claims against defendant. Cadles further argued that all but $68,443.50[3] of the over $1.5 million in damages claimed in the malpractice case were attributable to defendants' alleged malpractice in representing Joseph Koenig and his companies, and that the settlement proceeds should be proportionately allocated on that basis.

---

[3] Approximately $70,000 of the damages claimed were for defendants' alleged malpractice in representing Joseph Koenig and Laurie Koenig in the litigation involving the rental properties that Joseph Koenig transferred to Laurie Koenig in 2008 and the appointment of the receiver.

6

In an oral opinion, the court determined the settlement proceeds constituted the recovery of lost marital income that was subject to an equal allocation between Joseph Koenig and Laurie Koenig based on the principles of equitable distribution. The court relied on our Supreme Court's decision in Landwehr v. Landwehr, 111 N.J. 491, 502 (1988), where it was held that monies recovered for lost income in a personal injury action by one spouse constituted marital income subject to equitable distribution in the couple's divorce proceeding. Here, the court relied on the holding in Landwehr, reasoned that the settlement proceeds represented a recovery of lost marital income and concluded that application of equitable distribution principles required an equal allocation of the settlement monies between Joseph Koenig and Laurie. The court held the $225,000 due to Laurie Koenig under the settlement was properly apportioned to her.

The court entered a June 23, 2017 order apportioning fifty percent of the settlement proceeds to Laurie Koenig and fifty percent to Joseph Koenig, and directing that Laurie Koenig's share of the settlement proceeds was not subject to Cadles's writ of execution. This appeal followed.

We review a trial court's interpretation of the law de novo. Serico v. Rothberg, 234 N.J. 168, 175 (2018). "A trial court's interpretation of the law

A-5389-16T2

and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Cadles argues the court erred as a matter of law by deciding the apportionment of the settlement proceeds based on principles of equitable distribution. Cadles claims the settlement proceeds should be apportioned on a pro rata basis consistent with Joseph and Laurie Koenig's respective damages in the malpractice action. More particularly, Cadles argues that because the alleged losses suffered directly by the judgement debtor, Joseph Koenig, constituted 95.83 percent of the damages claimed in the malpractice case, and Laurie Koenig's alleged damages comprised only 4.17 percent of the damages claimed, only 4.17 percent of the $450,000 settlement should be apportioned to Laurie Koenig.[4]

Based on our review of the record, we agree the court erred by relying on equitable distribution principles in its effort to apportion the proceeds of the settlement. "The equitable distribution statute authorizes the Family Part to distribute assets 'in all actions where a judgment of divorce, dissolution of civil

---

[4] Cadles's calculations are based on its assertion that Joseph Koenig's damage claims in the legal malpractice action totaled $1,573,868.50, and Laurie Koenig's damage claims totaled $68,443.50.

union, divorce from bed and board or legal separation from a partner in a civil union couple is entered.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016) (quoting N.J.S.A. 2A:34-23(h)). The statute's application is limited to disputes between married and civil union couples and does not apply where, as here, the dispute over property is between a married couple and a third-party judgment creditor of one the spouses. Ibid.; see also Kozlowski v. Kozlowski, 80 N.J. 378, 383 (1979) (explaining that the equitable distribution statute then in effect permitted an award "only in actions for divorce").

Moreover, although "[t]he equitable distribution statute 'reflects a public policy that is "at least in part an acknowledgment that marriage is a shared enterprise, a joint undertaking, that in many ways [ ] is akin to a partnership,"'" Slutsky v. Slutsky, 451 N.J. Super. 332, 358 (App. Div. 2017) (alteration in original) (quoting Thieme, 227 N.J. at 284), "equitable [distribution] is not synonymous with equal," ibid. A court's determination of the equitable distribution of marital or civil union property "requires [an] evaluation of unique facts attached to each asset" in accordance with the criteria established in N.J.S.A. 2A:34-23.1. Ibid. Thus, even if we were to assume the principles of equitable distribution controlled the requested allocation of the settlement proceeds at issue here, which they do not, those principles would not require an

equal apportionment of the settlement proceeds between Joseph Koenig and Laurie Koenig. See, e.g., Rothman v. Rothman, 65 N.J. 219, 232 n.6 (1974) (rejecting the notion that, in determining the equitable distribution of marital assets, a trial court should presumptively assign each spouse fifty percent of eligible assets); Clementi v. Clementi, 434 N.J. Super. 529, 539 (Ch. Div. 2013) (noting that "it has long been established that neither party is automatically entitled to fifty percent of any specific asset" in an equitable distribution award).

We are therefore constrained to vacate the court's determination that Laurie Koenig's fifty percent share of the settlement proceeds is beyond the reach of Cadles's writ of execution because it is based on the incorrect legal conclusion that equitable distribution principles governed the allocation of the proceeds to Laurie Koenig. The court erred as a matter of law, and its reliance on Landwehr was misplaced.

We remand the case for further proceedings and do not offer any opinion as to the merits of the parties' requests for apportionment. In doing so, we observe that, as a matter of fact, the settlement proceeds have already been apportioned by the Koenigs—they each received $225,000 in exchange for their release of all claims against defendants. Yet the Koenigs and Cadles moved before the court for an apportionment of the settlement proceeds. The parties'

10

submissions to the motion court and on appeal, however, are bereft of citation to a court rule, statute or case law authorizing the requested apportionment and are untethered to any identified legal standard against which their requests for apportionment may be measured.

Although we review orders and not a motion court's reasoning, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001), we may properly do so only where the record allows an understanding of the legal authority relied upon for the relief sought. Other than the Koenigs' erroneous claim that equitable distribution principles were determinative of their request for apportionment, the parties do not cite to any authority allowing the court to grant such a request. Cadles's argument that it is entitled to a pro rata share of the settlement proceeds based on the Koenigs' respective damages claims in the malpractice action is unencumbered by any legal authority that it is entitled to set aside the Koenigs' agreed upon apportionment of the settlement proceeds. It is not the responsibility of this court to conjure up sources of legal support authorizing a party's requests for relief and then determine whether they support the court's order. The parties' failure to identify the legal authority authorizing the court to grant the requested apportionment deprived the motion court and this court of a legal standard against which the validity of the motions can be measured.

11

We do not suggest there is no legal authority supporting a claim to apportion the settlement proceeds or to set aside the apportionment agreed upon by the Koenigs in the settlement. We simply note that neither party identified the legal authority upon which their motions were founded and decide only that the court's application of equitable distribution principles does not support its findings and order. On remand, the parties may pursue their respective claims, but must identify the legal authority supporting their claims and the court's authority to grant their requests for relief, as well as the legal standard by which the claims should be measured.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5389-16T2