**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2468-19

JOANN LOPEZ,

      Plaintiff-Appellant,

v.

LORRAINE CUTILLO,

      Defendant-Respondent.

_____

Submitted March 10, 2021 – Decided July 22, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0436-18.

Fusco & Macaluso Partners, LLC, attorneys for appellant (Amie E. DiCola, on the brief).

Greenbaum, Rowe, Smith & Davis LLP, attorneys for respondent (Jeanette Russell, of counsel and on the brief).

PER CURIAM

In this dissolution matter, plaintiff Joann Lopez appeals from portions of the Family Part's January 7, 2020 Dual Final Judgment of Divorce. On appeal, plaintiff challenges the trial judge's alimony award to defendant Lorraine Cutillo, as well as the judge's decision not to enforce two alleged debts. Because the trial judge's factual findings are supported by substantial evidence and her legal conclusions comport with applicable law, we affirm.

The parties were married on March 31, 2012. Plaintiff filed a complaint for divorce on October 10, 2017. No children were born during the marriage, but plaintiff has one child from a previous relationship, J.L., born in January 2011. With the exception of alimony, two alleged debts, and attorney's fees, all aspects of the divorce were resolved by consent orders.

Plaintiff has been a police officer since 2001. At the time of the trial, she was a Detective Sergeant for the Newark Police Department. During the marriage, plaintiff was the primary wage earner. Her form 1040 wages for the years 2016 through 2018 were: $130,163 in 2016; $123,906 in 2017; and $120,260 in 2018. For the purposes of alimony, the judge found plaintiff's annual income was $120,000.

Defendant earned substantially less during the marriage and has a sporadic employment history. In 2006, she was diagnosed with a cardiac condition which

2

impedes the electoral impulses on the left side of her heart. Before suffering from a sudden cardiac arrest in November 2016, defendant purchased items at auctions to refurbish and sell on eBay for income. Since the cardiac arrest, defendant has been able to engage only in sedentary work. She also manages and collects rental income from a building she co-owns with her sister and sister-in-law in Hoboken. For the purposes of alimony, the parties stipulated that defendant's annual income is $33,000.

Before meeting plaintiff, defendant co-owned a home in Brick, New Jersey, with her friend, Cynthia. In 2003, Cynthia moved to Florida and sold her interest in the home to plaintiff. Plaintiff assumed and refinanced the mortgage, using the proceeds to purchase Cynthia's equity. After refinancing, plaintiff was the only person encumbered by the mortgage.

Plaintiff has paid the mortgage, homeowner's insurance, and property taxes from the time she moved into the home in 2003. All other household expenses were split evenly before and during the marriage. The only financial aspect of the relationship that changed between the parties after they were married was that defendant received health insurance benefits as plaintiff's spouse, and would reimburse plaintiff for the costs. Each party maintained separate bank accounts and lines of credit; there was no comingling of marital

3

funds.  The electricity, natural gas, cable, and internet were placed in plaintiff's name and funds were withdrawn directly from her account each month to pay for the utilities.  Defendant then reimbursed plaintiff for her half of the bills in cash.  All other expenses, including but not limited to food, entertainment, landscaping, and pool maintenance were also equally divided, with one party reimbursing the other, in cash, for the expenses paid on their behalf.  Defendant paid plaintiff for the cost of her health insurance benefits in advance each month.

Since the parties separated, plaintiff's monthly expenses have decreased. Her Case Information Sheet (CIS) listed post-marital monthly expenses totaling more than $8,000.  In June 2017, however, plaintiff left the marital home and moved into her girlfriend's house.  Her girlfriend owns the home and does not require plaintiff to contribute to the mortgage.  Instead, she pays approximately $800 per month for the gas, electricity, cable, and internet.  During cross-examination, plaintiff conceded that the expenses listed in her CIS were inflated by at least $2,400 per month.

Conversely, defendant has had to rely on savings and support from her family members to pay her bills since the parties separated.  Defendant's CIS lists $2,959 in post-marital monthly expenses, which result in annual costs that exceed her stipulated income. Compounding the deficit, defendant's CIS did not

4

contemplate the additional monthly cost of health insurance after she was dropped from plaintiff's policy, which was estimated would increase from $364 to at least $1,000.

At trial, disputes arose regarding two alleged debts. The first was related to plaintiff's acquisition of Cynthia's equity in the house. Plaintiff testified that defendant owed her $25,000 after she refinanced the mortgage. She planned to collect the funds when the parties sold the home and retired to Florida. Defendant conceded that she incurred a debt associated with plaintiff's purchase of the home, but testified she owed only $13,000. She alleged that she repaid the debt over six years by making monthly payments of $200, as the parties had previously agreed. Neither party provided a copy of the original mortgage or the refinancing agreement. Consequently, the record is unclear as to exactly what debts existed before or after Cynthia's departure.

To support her claim, plaintiff produced a document which she argued memorialized defendant's agreement to repay the $25,000. She testified that at some point in 2002 or 2003, the parties drafted the agreement in their living room. The document is a poor-quality photocopy of the back of a notepad. Some handwritten markings appear on the top of the page, but only "$25,000" and "balance" can be made out. Because the document was not the original

5

agreement, the judge did not allow it to be placed into evidence. See N.J.R.E. 1002.

The parties also disputed an insurance reimbursement that defendant received. Prior to the marriage, the parties took out four mortgage life insurance policies; two in each party's name. Two of the policies included terms that provided reimbursement of the premiums after ten years of payments without a claim. The monthly premiums for all of the policies were deducted from plaintiff's checking account from the time they were initially obtained until June 2017. Because defendant smoked, the premiums due on her policy were higher.

Plaintiff testified that the parties orally agreed that she would collect the reimbursements on both policies when they became available, since she had paid the premiums. Before she was able to collect, however, the parties separated. Defendant, on the other hand, testified that the insurance policies were no different from any other household expense. Each month defendant repaid plaintiff in cash for the amount due on her behalf. When the policies expired, the insurer sent each party a check. Defendant's reimbursement was more than $15,000. In support of her claim to the reimbursement, plaintiff produced two statements from her checking account showing transaction history from December 10, 2014, through January 8, 2015, and May 10, 2017, through June

9, 2017. The statements show payments in the amount of $99.64 and $33.51 were made to the insurer on December 22, 2014, and May 22, 2017. She also provided letters she exchanged with the insurers discussing cancellation of the policies.

On January 7, 2020, the judge entered a Dual Final Judgment of Divorce accompanied by a twenty-six-page written decision. After comprehensively analyzing each of the fourteen alimony factors, pursuant to N.J.S.A. 2A:34-23(b), the judge awarded defendant limited duration alimony in the amount of $400 per week for forty-two months, secured by a $70,000 life insurance policy.

In a similar fashion, the judge addressed the equitable distribution of the alleged debts, incorporating each factor under N.J.S.A. 2A:34-23.1 into her analysis, and concluded that plaintiff had failed to establish either of the alleged debts. With regard to the mortgage-related debt, the judge found that "[p]laintiff failed to provide a scintilla of evidence that this mortgage existed, let alone any agreement. The [c]ourt was not provided with a single financial document pertaining to this alleged transaction."

In addressing the insurance reimbursement, the judge noted that both parties testified extensively that expenses were shared equally throughout the marriage, and that the parties repaid each other almost exclusively in cash. The

7

judge found that plaintiff had successfully established that the policies existed and that premiums were withdrawn from her account, but failed to demonstrate that she was not reimbursed by defendant in the same manner as every other martial expense. Consequently, defendant was not ordered to repay either of the alleged debts.[1]

On appeal, plaintiff raises the following issues for our consideration:

POINT I

THIS HONORABLE COURT SHOULD REVERSE THE [TRIAL JUDGE'S] DECISION, IN WHICH SHE ORDERED THAT ALIMONY WAS TO BE PAID FROM [PLAINTIFF] TO [DEFENDANT] IN THE AMOUNT OF [$400] PER WEEK FOR FORTY-TWO MONTHS, AS THIS DECISION WAS NOT SUPPORTED BY ADEQUATE, SUBSTANTIAL, CREDIBLE EVIDENCE.

POINT II

THIS HONORABLE COURT SHOULD REVERSE THE [TRIAL JUDGE'S] DECISION, IN WHICH SHE ORDERED THAT [PLAINTIFF] HAD FAILED TO MEET HER BURDEN OF PROOF WITH REGARD TO THE EQUITABLE DISTRIBUTION OF THE [$25,000] MORTGAGE AMOUNT SHE ASSUMED AND THE MORTGAGE INSURANCE PREMIUMS, AS THIS DECISION WAS NOT SUPPORTED BY ADEQUATE, SUBSTANTIAL, CREDIBLE EVIDENCE.

---

[1] The parties were ordered to pay their own attorneys' fees.

In our review, we defer to a trial court's factual findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). We "do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Slutsky v. Slutsky, 451 N.J. Super. 332, 344 (App. Div. 2017) (quoting Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008)). This is particularly so in divorce proceedings, because they "involve[] the Family Part's 'special jurisdiction and expertise in family matters,' which often requires the exercise of reasoned discretion." Ibid. (quoting Cesare, 154 N.J. at 413).

"[O]ur '[d]eference is especially appropriate'" where, as here, "the evidence is largely testimonial and involves questions of credibility." Ibid. (second alteration in original) (quoting Cesare, 154 N.J. at 412). "Because a trial court '"hears the case, sees and observes the witnesses, [and] hears them testify," it has a better perspective than a reviewing court in evaluating the veracity of witnesses.'" Cesare, 154 N.J. at 412 (alteration in original) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)). Thus, we will not disturb a trial court's factual findings unless we are "convinced that they are so manifestly

unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

Plaintiff argues the trial judge's decision to award defendant limited durational alimony was not supported by evidence demonstrating her inability to maintain the parties' martial lifestyle. She reminds us that the parties kept separate financial accounts and split household expenses equally, both before and during the marriage, and therefore contends that alimony is unnecessary to enable defendant to maintain the lifestyle she was able to independently provide for herself. Plaintiff argues that because defendant did not depend on her financial support during the marriage, she should not have to provide financial support following the divorce.

A Family Part judge has broad discretion in setting an alimony award. Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004) (citing N.J.S.A. 2A:34-23(b)). However, "the exercise of this discretion is not limitless" and is "frame[d]" by the statutory factors set forth in N.J.S.A. 2A:34-23(b). Ibid. We will not disturb an alimony award if the trial judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice."

10

Foust v. Glaser, 340 N.J. Super. 312, 316 (App. Div. 2001) (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)).  The purpose of alimony is "to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage."  Crews v. Crews, 164 N.J. 11, 16 (2000).

In this case, the trial judge's decision to award defendant limited durational alimony was supported by substantial, adequate, credible evidence.  The judge considered the financial needs and circumstances of both parties, their testimony regarding the marital lifestyle and financial matters, the duration of the marriage, and all of the documentary evidence when she carefully and systematically analyzed each of the alimony factors.  That analysis led her to conclude that limited durational alimony, in the amount of $400 per week for a period of forty-two months, was necessary in order for defendant to maintain the marital lifestyle.  We discern no abuse of discretion in either the amount or duration of alimony ordered.

With regard to equitable distribution of the alleged debts, plaintiff argues the trial judge disregarded credible evidence in the record by concluding that she failed to establish the legitimacy of either the mortgage-related debt or the parties' agreement regarding defendant's insurance reimbursement.  Plaintiff

11

contends that her testimony, as well as the documentary evidence she produced, including the photocopy of the purported agreement, definitively established defendant's obligation to repay the debts.

The equitable distribution of property aims "to effect a fair and just division of marital assets." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (quoting Steneken, 367 N.J. Super. at 434). "It reflects a public policy that is 'at least in part an acknowledgement "that marriage is a shared enterprise, a joint undertaking, that in many ways [] is akin to a partnership."'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 284 (2016) (alteration in original) (quoting Smith v. Smith, 72 N.J. 350, 361 (1977)). "Applying the equitable distribution statute, a Family Part judge undertakes a three-step analysis." Ibid. n.4 (citing Rothman v. Rothman, 65 N.J. 219, 232 (1974)). The judge must first "'decide what specific property of each spouse is eligible for distribution'; second, [he or she] 'must determine [the property's] value for purposes of such distribution'; and finally, it 'must decide how such allocation can most equitably be made.'" Ibid. (alteration in original) (quoting Rothman, 65 N.J. at 232). It is the proponent's "obligation to persuade the court, by a preponderance of the evidence, that the proposal for equitable distribution is fair and equitable under the specific facts of the case." Clementi v. Clementi, 434 N.J. Super. 529, 532 (Ch. Div. 2013).

Initially, we find no error in the judge's decision not to admit the alleged copy of the parties' agreement regarding the mortgage-related debt. N.J.R.E. 1002, known as the "Best Evidence Rule," requires an original writing to prove its contents, when the writing's contents are material to the dispute, and production is not otherwise excused. Moreover, plaintiff was unable to authenticate the document, recalling only that it was drafted in either 2002 or 2003 in the parties' living room. See N.J.R.E. 901. Accordingly, the judge did not abuse her discretion in rejecting the exhibit.

Plaintiff similarly failed to offer any evidence tending to show the parties' alleged agreement that she would receive defendant's insurance reimbursement. While acknowledging plaintiff's production of her communications with the insurer as well as her bank statements, she failed to offer any evidence showing she was entitled to the funds. Defendant testified she repaid plaintiff for the premiums each month. Conversely, plaintiff testified that she was never repaid. The trial judge found "the credibility of the parties regarding this specific issue [was] in equipoise." Without further proof of the parties' agreement, we conclude the judge's decision not to enforce either of the alleged debts was supported by substantial, adequate, credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                            A-2468-19