**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2468-18T4

BRENDEN RUH,

    Plaintiff-Appellant,

v.

JACQUELINE VAN CLEEF,

    Defendant-Respondent.

_____

Submitted March 3, 2020 – Decided April 14, 2020

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0793-08.

Dwyer, Bachman, Newman & Solop, attorneys for appellant (Elliot Steven Solop, of counsel and on the briefs; Lauren A. Conway, on the briefs).

The DeTommaso Law Group, LLC, attorneys for respondent (Michael J. DeTommaso, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Brenden Ruh appeals from the following Family Part orders: (1) the October 11, 2018 order (paragraphs four, five, and fourteen), directing him to pay to defendant Jacqueline Van Cleef base child support of $282 per week, plus $107 to account for a percentage of the parties' excess income, and denying his request to modify the parenting time schedule; and (2) the January 4, 2019 order (paragraphs one, two, and three), denying his motion for reconsideration. We affirm the order regarding parenting time. However, we reverse the order of child support and remand for further factual findings and an analysis of N.J.S.A. 2A:34-23(a) and the applicable case law.

I.

We set forth only the procedural history and facts relevant to this appeal as derived from the motion record. The parties were divorced on September 29, 2008. They have a child born in February 2006. The final judgment of divorce incorporated a matrimonial settlement agreement (MSA), which was amended by a July 26, 2016 consent order. Under the consent order, plaintiff had parenting time with the child six out of every fourteen days commencing every Friday evening through Monday morning.

On August 8, 2018, defendant filed a motion seeking, amongst other relief, retroactive modification of plaintiff's child support obligation. At the time defendant's motion was filed, plaintiff's weekly child support obligation was $199.[1] In her moving certification, defendant stated that plaintiff removed the child from his health insurance coverage in violation of the terms of the MSA without notifying her. Defendant certified it will cost her $212.60 per month to enroll the child in a healthcare plan providing medical, dental, and vision coverage. As a result, she argued plaintiff's credit for health insurance coverage should be abrogated and child support should be recalculated.

Defendant also claimed that plaintiff's salaried income increased from $165,000 to between $300,000 and $500,000 annually, and in addition to his salaried employment, plaintiff owned and operated two side businesses. According to defendant, plaintiff's income from his side businesses should be considered in the re-calculation of child support. Defendant estimated that plaintiff's side businesses would increase his gross annual income by $100,000 to $200,000.

---

[1] In the MSA, plaintiff's child support obligation was set at $156 per week. Due to Cost of Living Adjustments (COLA), the obligation was increased to $199 per week.

A-2468-18T4

Defendant's salary also increased from $45,600 annually to $75,271 since the divorce, in addition to trust income. Her gross annual income is now $111,899. Since defendant was seeking above the Guidelines child support based on these increases, she requested plaintiff provide complete information regarding his finances.

Plaintiff filed an opposition to defendant's motion and a cross-motion. He acknowledged removing the child from his health insurance coverage, but claimed the child was added to his new wife's health insurance policy, which was more cost-effective. In addition, plaintiff acknowledged that child support should be revisited based upon changed circumstances. However, plaintiff disputed the need for child support to be calculated above the Guidelines. He questioned the legitimacy of out-of-pocket expenses that defendant paid for the child and the amount of money she received from what he believed were multiple trusts. Plaintiff also sought full financial disclosure from defendant.

By way of cross-motion, plaintiff sought to modify parenting time from six out of every fourteen days to seven out of fourteen days so the child could spend more time with plaintiff's family and newborn from his subsequent marriage, which he argued established a change of circumstances. In plaintiff's view, a shared parenting arrangement with the child would allow plaintiff to

A-2468-18T4

participate in extracurricular activities on days when he did not have overnight parenting time. Defendant opposed plaintiff's cross-motion and argued that the child's best interests were served under the existing parenting time arrangement.

On September 21, 2018, the court held oral argument on the motions. Regarding the parties' incomes, the court stated:

> So we get down to how much money does anybody want to spend to be right, because that's what you're going to be spending the money for, not to get a bigger or smaller child support number, but to be right about it.
>
> And I think, quite frankly, in this particular case, while yes, there might or might not be issues of trust income, there might or might not be issues of what's deductible and what's not deductible in dad's small businesses. Maybe we could litigate them, you know, until I retire.
>
> But it's probably not going to resolve in a benefit particularly to either one of you, particularly in light of any counsel fees that you would incur which would, I promise you, greatly outweigh any financial benefit there may be.
>
> So if we can agree altogether that we can go on the papers, we can do that.

The parties agreed, through counsel, that the issue of base child support, and the discretionary above the Guidelines amount, would be decided on the motion papers submitted, and oral argument, without the need for discovery or a plenary hearing. On the record, the parties stipulated using $304,851 for

5

plaintiff and $77,932 for defendant for W-2 wages for purposes of calculating child support.

Finding a substantial change of circumstances in the parties' income since the divorce was entered, the court ordered a modification to the child support amount. The court determined that the parties' combined income was $911 per week over the Guidelines limit, and allocated 74% of that amount to plaintiff, and 25% to defendant. The court determined that $107 per week of the excess income, to be added to plaintiff's base obligation of $282, was an appropriate award. The new child support obligation entered was $389 weekly, effective August 8, 2018. The court commented that "to the extent that [d]efendant wants to maintain [health] insurance [on behalf of the child], she certainly can," and gave defendant a health insurance credit.

The judge denied plaintiff's cross-motion seeking shared parenting time, reasoning there was a disparity in "quality" time the parties spent with the child. On weekdays, the child is consumed with school and homework with defendant, while on weekends, the child has quality time with plaintiff. The court noted that plaintiff coaches all three of the child's sports. Although acknowledging plaintiff established a substantial change of circumstances, the judge concluded there was no need to modify the parenting time schedule.

A-2468-18T4

On November 6, 2018, plaintiff filed a motion for reconsideration of the child support calculation and parenting time provision in the October 11, 2018 order. He claimed the court erred by not including defendant's trust income in the child support calculation, erred by providing defendant with a credit for maintaining the child on her health insurance, and failed to assess the N.J.S.A. 2A:34-23(a) factors in calculating the above the Guidelines child support. Plaintiff also asked for reconsideration of the parenting time issue.

Defendant opposed the motion for reconsideration and filed a cross-motion, contending the parties' incomes were stipulated to, thereby constituting a waiver of the figures analyzed by the court. In addition, defendant claimed there was no error in the calculation by the court. In his reply, plaintiff argued the court improvidently applied an extrapolation above the Guidelines limit, and he sought a plenary hearing on the issues of child support and parenting time.

The court denied the motions. In a January 4, 2019 order, the court confirmed that the statutory criteria were analyzed, including a consideration of the parties' lifestyle, and noted that the child should enjoy the financial fortune of the parents. As to parenting time, the court found its decision was not made upon an incorrect basis, and it did not fail to consider the evidence presented.

On appeal, plaintiff argues that the court abused its discretion in failing to reconsider paragraphs four, five, and fourteen of the October 11, 2018 order regarding the child support calculation and parenting time.

II.

When reviewing decisions granting applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion. Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). "The trial court has substantial discretion in making a child support award. If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001) (internal citations and quotation marks omitted).

We may thus reverse a trial court's decision when it "is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). Moreover, we are not bound by "[a] trial court's interpretation of the law" and do not defer to legal consequences drawn

A-2468-18T4

from established facts. <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

By statute, parents are presumptively required to provide for the financial support of their unemancipated children. N.J.S.A. 2A:34-23(a). The State has established presumptive Guidelines, and a corresponding worksheet, to calculate child support. <u>See</u> Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A and IX-B to <u>R.</u> 5:6A, www.gannlaw.com (2020). The Court Rules prescribe that the Guidelines "shall be applied when an application to establish or modify child support is considered by the court." <u>R.</u> 5:6A; <u>see also</u> <u>Lozner v. Lozner</u>, 388 N.J. Super. 471, 479-80 (App. Div. 2006). "A court may deviate from the [G]uidelines only when good cause demonstrates that [their] application . . . would be inappropriate." <u>Id.</u> at 480 (citing <u>Ribner v. Ribner</u>, 290 N.J. Super. 66, 73 (App. Div. 1996)).

We begin our analysis by setting forth basic but relevant principles regarding child support above the Guidelines. Where family income exceeds the maximum amount under the Guidelines, the court has discretion to calculate child support using the maximum support under the Guidelines and "combining that preliminary figure with a supplemental award subject to the provisions of N.J.S.A. 2A:34-23(a) . . . ." <u>Pascale v. Pascale</u>, 140 N.J. 583, 595 (1995).

N.J.S.A. 2A:34-23(a) directs a court to consider the following factors in determining child support in high income cases:

1. Needs of the child;

2. Standard of living and economic circumstances of each parent;

3. All sources of income and assets of each parent;

4. Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing childcare and the length of time and cost of each parent to obtain training or experience for appropriate employment;

5. Need and capacity of the child for education, including higher education;

6. Age and health of the child and each parent;

7. Income, assets and earning ability of the child;

8. Responsibility of the parents for the court-ordered support of others;

9. Reasonable debts and liabilities of each child and parent; and

10. Any other factors the court may deem relevant.

The trial judge "must consider" the statutory factors in determining the supplemental award. Caplan v. Caplan, 182 N.J. 250, 271 (2005). The judge must also provide "clearly delineated and specific findings addressing the

10                                                                          A-2468-18T4

statutory factors relevant to any award or modification of child support." Loro v. Colliano, 354 N.J. Super. 212, 220 (App. Div. 2002).

The Supreme Court has also directed that while the parties' respective income percentages are to be considered for calculating child support under the Guidelines, those percentages cannot be used to determine the supplemental child support component. The Court elaborated:

> [B]ecause the income and assets of each party are only two of the many statutory factors the trial court must consider in determining a fair and just child support award, the allocation equation utilized under the [G]uidelines-based award has little or no application to the amount of additional support determined through analyzing the N.J.S.A. 2A:34-23 factors.
>
> [Caplan, 182 N.J. at 271.]

In Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002), we explained that a judge should not extrapolate above the threshold using the respective incomes because the "extrapolation undermines the statistical basis of the [G]uidelines."

Here, the judge failed to follow the strictures of Pascale and apply the statutory factors in determining the support amount even though she claimed to. Rather, the court seemed to simply extrapolate the discretionary amount over the Guidelines figure according to the parties' percentages of income, a method

specifically barred by Rule 5:6A.  The record is devoid of any findings as to what figures the judge considered for plaintiff's side businesses and defendant's trust income.

Moreover, the court's calculation fails to account for any of the statutory factors.  Her ruling fails to "clearly delineate[] and . . . address[] the statutory factors relevant to any award or modification of child support."  Loro, 354 N.J. Super. at 220.  The child support amount did not include expenses related to the child's extracurricular activities or other personal items.

In the context of high-income parents whose ability to pay is not an issue, "the dominant guideline for consideration is the reasonable needs of the [child], which must be addressed in the context of the standard of living of the parties. The needs of the [child] must be the centerpiece of any relevant analysis." Isaacson, 348 N.J. Super. at 581.

We are therefore constrained to reverse the order fixing child support and remand this matter to the trial court for a calculation of plaintiff's child support obligation using the Guidelines and statutory factors.  See N.J.S.A. 2A:34-23(a). In doing so, the judge must make a determination on all of the parties' incomes. Further, the judge must incorporate plaintiff's other child support obligation, or explain the reasons for deviating from the Guidelines in declining to do so.  We

defer to the trial judge to determine whether the submission of additional financial documentation and a plenary hearing is necessary to address these or other materially disputed issues. The trial court shall make appropriate findings of fact and conclusions of law, as required by Rule 1:7-4.

III.

We next address the parenting time issue. In order to modify an existing parenting time arrangement, a two-step approach is undertaken to determine whether: (1) there is a change of circumstances warranting modification; and (2) such an application serves the child's best interests. Chen v. Heller, 334 N.J. Super. 361, 380 (App. Div. 2000). Child's interests are so crucial that these courts of equity are known to relax this two-prong approach because "[t]he primary consideration of the court in assessing whether the parent seeking modification has met his or her burden is the best interests of the child." Ibid. This process has been a staple of modification of an existing custody order as a "two-step process." R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)).

If the party makes that showing, the party is "entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether

those best interests are served by modification of the existing custody order." Ibid. (quoting Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009)).

Here, the judge aptly found that "not every change warrants a modification." The judge also concluded that plaintiff is spending more quality time with the child than defendant is.

We also note the parties agreed to modify their parenting time schedule in 2016 and incorporated their agreement into a consent order, modifying the MSA. "New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Voluntary agreements that address and reconcile conflicting interests of divorcing parties support our 'strong public policy favoring stability of arrangements' in matrimonial matters." Konzelman, 158 N.J. at 193 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)).

Thus, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith, 72 N.J. at 358). "A party seeking modification of a judgment, incorporating a [settlement agreement] regarding custody or visitation, must meet the burden of showing changed circumstances and that the agreement is now not in the best

14

interests of a child." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (alteration in original) (quoting Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003)).

The consent order changed the majority of plaintiff's overnight visitation with the child to weekends. Plaintiff argued that the birth of his newborn, his extracurricular involvement with the parties' child, and the child's age constitute a change in circumstances. In addition, plaintiff asserted giving him weeknight visitation with the child would alleviate defendant's three-hour weekly reliance on her family members to care for the child.

The court acknowledged that plaintiff fathered a new child and "made a requisite showing of [a] substantial change in circumstances," but no modification was warranted. We discern no abuse of discretion by the judge. Her findings and conclusions on the parenting time issue are supported by adequate, substantial, credible evidence in the record.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2468-18T4